IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| PHILIP BRADFORD, on behalf of himself and others similarly situated, | |
| Plaintiffs, | CIVIL ACTION FILE No._____ |
| v. | |
| CVS CAREMARK CORP. and CVS PHARMACY, INC., | JURY TRIAL DEMANDED |
| Defendants. | |

## COMPLAINT

COMES NOW PHILIP BRADFORD, on behalf of himself and all others similarly situated, through his counsel, STEPHEN M. KATZ, THE KATZ LAW GROUP, and alleges:

### NATURE OF THIS ACTION

1.

This is a collective action brought under The Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA") to recover unpaid overtime compensation, liquidated damages, attorneys fees, and costs. Bradford brings this action on behalf of himself and all other similarly situated "Loss Prevention Managers"

"Customer who elect to opt into this action pursuant to the FLSA, 29 U.S.C. § 216(b). (the "Collective Action Class").

2.

Bradford brings state law claims for breach of contract, as well as for equitable relief in the form of reformation or modification and specific performance, of his employment agreement with CVS.

3.

Bradford, on behalf of the Collective Action Members, brings a claim for a declaratory judgment that any contractual releases of (a) FLSA coverage and, (b) overtime due, owing and unpaid, CVS obtained from any Collective Action Member, are void as a matter of law.

PARTIES

4.

Bradford lives in Acworth, Georgia, which is located in the Northern District of Georgia.

5.

CVS Caremark Corporation is a corporation which maintains, and, at all times relevant, maintained offices in the State of Georgia, and transacts and has

transacted regular, not isolated, acts of business in metropolitan Atlanta, Georgia as well as nationally. CVS Caremark Corporation can be served by delivering a copy of the summons and complaint to CT Corporation, Registered Agent, 1201 Peachtree Street, Atlanta, Georgia 30361.

6.

CVS Pharmacy, Inc. is a corporation which maintains, and, at all times relevant, maintained offices in the State of Georgia, and transacts and has transacted regular, not isolated, acts of business in metropolitan Atlanta, Georgia as well as nationally. CVS Pharmacy, Inc. can be served by delivering a copy of the summons and complaint to its registered agent Corporation Process Company, 210 Satellite Boulevard, Suite 400, Duluth, Georgia 30097. CVS Caremark Corporation and CVS Pharmacy, Inc. are collectively referred to as "CVS."

7.

CVS is engaged in commerce as defined under the FLSA at 29 U.S.C. § 203(b).

8.

CVS is an "enterprise engaged in commerce or in the production of goods or services for commerce" pursuant to the FLSA, 29 U.S.C. § 201 *et. seq.*

9.

At all relevant times, CVS has been and remains an Employer within the meaning of §3(d) of the FLSA, 29 U.S.C. § 203(d), in that CVS acted ". . .directly or indirectly in the interest of an employer in relation to an employee. . ."

10.

As an employer engaged in commerce, CVS is subject to the requirements of the FLSA, 29 U.S.C. § 201 *et. seq.*

11.

CVS was at all relevant times aware, and remains aware, of the existence and requirements of the FLSA, including, without limitation, the duty to pay overtime compensation and the duty to refrain from retaliating and discriminating against employees who seek to recover overtime or complain about violations of the FLSA.

12.

During and after Bradford's employment, CVS was aware, and remains

- 4 -

aware, that employees' FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the FLSA and thwart the legislative policies it was designed to effectuate.

## JURISDICTION

### FEDERAL QUESTION JURISDICTION

13.

Jurisdiction over this action is conferred on this Court under 28 U.S.C. § 1331 in that Bradford's FLSA claims arise under a federal statute, *i.e.* 29 U.S.C. § 201 et seq.

### INDEPENDENT BASIS FOR JURISDICTION - DECLARATORY JUDGMENT

14.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act, however, "does not impose a higher threshold for justiciability than the basic Article III requirement that federal courts shall only decide cases and controversies.

15.

Because FLSA rights cannot be abridged by contract or otherwise waived as this would 'nullify the purposes' of the FLSA and thwart the legislative policies it was designed to effectuate, an actual controversy exists between the parties as to whether CVS violated the FLSA by conditioning the payment of benefits otherwise due Bradford (severance pay) on Bradford's waiver of his rights under the FLSA.

16.

This Court therefore has authority to adjudicate Bradford and the putative class' declaratory judgment claims under 28 U.S.C. § 2201 because there exists an independent basis for subject matter jurisdiction, *i.e.* pursuant to 29 U.S.C. § 201 *et seq.*

## SUPPLEMENTAL JURISDICTION

17.

This Court has "supplemental jurisdiction" over Bradford's state law claims under 28 U.S.C. § 1367(a) because this Court has original jurisdiction over this action and all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under

Article III of the United States Constitution.

## ARTICLE III AND PRUDENTIAL STANDING

18.

Bradford has Article III standing to bring his individual claims in that CVS' violation of § 216(b) and its breach of its employment agreement with Bradford (1) has caused Bradford to suffer an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized", and "(b) "actual or imminent, not 'conjectural' or 'hypothetical' (2) the injury was causally connected to CVS' actions, and (3) it is "likely" as opposed to merely "speculative," that Bradford's injury will be "redressed by a favorable decision."

19.

Bradford has prudential standing because (1) in enacting § 216(b), Congress conferred standing on employees to bring collective actions under the FLSA for the recovery of overtime compensation on behalf of other individuals similarly situated to them, (2) the claims asserted by Bradford are not "generalized grievances," and (3) the relief sought by Bradford on behalf of similarly situated individuals is within the "zone of interests" protected by the FLSA.

## VENUE

20.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 in that all of the acts complained of took place in this judicial district.

## COLLECTIVE ACTION ALLEGATIONS

21.

Pursuant to § 216(b), Bradford and the putative class of individuals seek to prosecute their FLSA claims as a collective action on behalf of themselves and all other similarly situated individuals whom CVS employed under the title (or similar title), "Loss Prevention Managers," and who

(a) are currently or formerly employed by CVS throughout the United States,

(b) are or who were non-exempt employees within the meaning of the FLSA and

(c) did not receive compensation for overtime (the "Collective Action Members").

22.

The "Collective Action Period" for which Bradford and the Collective

Action Members seek recovery is for the three (3) year period immediately preceding the date that each putative plaintiff "opts in" to this collective action.

23.

This Collective Action Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is not known to Bradford, the facts on which the calculation of that number can be based are presently within the sole control of CVS. There are approximately 200 putative members of the Collective Action Class during the Collective Action Period, most of whom would not be likely to file individual suits because they lack adequate financial resources, access to attorneys, or knowledge of their claims.

24.

Bradford will fairly and adequately protect the interests of the Collective Action Members. Bradford has no interest that is contrary to or in conflict with the putative members of this collective action.

25.

Furthermore, the expense and burden of individual litigation may make it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. A collective action is therefore superior to

other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

26.

Questions of law and fact common to the members of the collective action predominate over questions that may affect only individual members because CVS has acted on grounds generally applicable to all members. Among the questions of law and fact common to Bradford and other Collective Action Members are:

a.     whether CVS employed the Collective Action Members within the meaning of the FLSA and whether the Collective Action Members are "similarly situated" as that term is defined and interpreted under the FLSA;

b.     whether CVS can prove by a preponderance of the evidence it did not "misclassify" the Collective Action Members as "exempt" under the FLSA;

c.     what CVS can prove by a preponderance of the evidence the number of overtime hours worked by Bradford and the Collective Action Members where, as here, the employer has violated the FLSA by failing to maintain time records;

d.     whether CVS failed to pay the Collective Action Members for all of the hours worked by them as well as overtime compensation for hours worked in

excess of 40 hours per workweek, in violation of the FLSA and DOL regulations;

e.      whether CVS' violations of the FLSA are willful as that term is defined and interpreted by the FLSA, and, in particular, whether CVS willfully violated the FLSA by using its leverage and unequal bargaining power to extort contractual waivers of coverage and payment from certain  of the Collective Action Members;

f.      whether CVS can establish by a preponderance of the evidence that its acts and omissions were in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which CVS belongs; and

27.

There are no facts which indicate the existence of an undue burden in the management of this litigation as a collective action.

## FACTS RELATING TO BRADFORD'S CLAIM FOR UNPAID OVERTIME

28.

CVS employed Bradford from 1997 until January 19, 2012.

29.

Throughout his employment, Bradford served under the title (or similar title) of "Loss Prevention Manager," a misnomer as Bradford did not perform the duties of a "manager," as that term is commonly defined or interpreted under the FLSA, DOL regulations and the Merriam-Webster Unabridged Dictionary.

30.

CVS misclassified Bradford and other putative Collective Action Members as "managers" because their duties did not principally include managerial responsibilities or the exercise of independent judgment.

31.

Bradford and the Collective Action Members' principal duties did not involve the regular and customary exercise of discretionary authority on matters of importance.

32.

The work performed by Bradford and the Collective Action Members required little skill and no capital investment.

33.

Bradford and the Collective Action Members' principal duties involved non-managerial tasks, some of which are duties identical to those performed by employees CVS already classifies as non-exempt.

34.

While employed by CVS, Bradford and the Collective Action Members consistently worked, and continue to work, over 40 hours per week.

35.

Bradford and the Collective Action Members are similarly situated in terms of job duties and compensation.

36.

Bradford and the Collective Action Members consistently worked in excess of 50 hours per week.

37.

Bradford and the Collective Action Members often worked in excess of 60 hours per week.

38.

Bradford and the Collective Action Members often worked in excess of 70

hours per week.

39.

CVS never paid Bradford and the Collective Action Members with overtime compensation for hours worked in excess of 40 hours in a workweek.

## FACTS RELATING TO BRADFORD'S DECLARATORY JUDGMENT AND STATE LAW CLAIMS

40.

CVS offers qualified employees who qualify severance benefits according to the company's employment policies or manual or program if the employee sign a "Separation Agreement" with a General Release, Covenant Not to Sue, Confidentiality, and, importantly, Restrictive Covenants such as "Non-Disclosure of 'Confidential Information'," "Non-Solicitation and Non-Hire of Employees," "Non-Disparagement," and "Cooperation," akmong other things.

41.

The required Separation Agreement is ancillary[1] to Bradford's and/or

---

1 Ancillary. *adj.* 1. Subordinate (often with *to*) 2. That serves as an aid; auxillary. WEBSTER'S NEW WORLD DICTIONARY 51 (2d. college ed. 1984); BLACK'S LAW DICTIONARY 101 (9th ed. 2009); **ancillary** - "subservient, subordinate," from L. *ancillaris* "relating to maidservants," dim. of *ancilla* "handmaid," fem. diminutive of *anculus* "servant. . ."; Douglas Harper, ONLINE ETYMOLOGY DICTIONARY (2012), http://www.etymonline.com; Eric Patridge, ORIGINS: A SHORT ETYMOLOGICAL DICTIONARY OF MODERN ENGLISH 17 (Greenwich House 1983)(1958).

certain of the Collective Action Members' employment agreements with CVS. The Separation Agreement that is ancillary to the parties' employment agreement is attached as Exhibit A.

42.

Under its severance policy or program, CVS makes severance payments on a weekly, bi-weekly or monthly basis depending on the employee's current pay cycle.  (Exhibit B, lines 10-11)

43.

The severance payments CVS makes pursuant to its severance policy or program are made by check or direct deposit and are targeted for the Friday following the pay period.  (Exhibit B, lines 10-11)

44.

As part of its severance policy or program, CVS makes payments directly to healthcare and/or dental carrier for the applicable severance period.  (Exhibit B, lines, 13-14)

45.

On January 19, 2012, CVS, through its agents Paul Lehman and Jeannene Allen, terminated Bradford's employment after 15 years, ostensibly due to

"communication" problems.

46.

Bradford's termination was authorized by Michael Silvera, CVS' Vice-President in charge of Loss Prevention, as was the Separation Agreement presented to Bradford by Lehman and Allen.

47.

At the time it terminated Bradford's employment, CVS, through its agents Lehman and Allen, informed Bradford that the conversation that day was a "one-way street," and that Bradford was there only to listen, not speak.

48.

At the time it terminated Bradford's employment, CVS, through its agents, Lehman and Allen told Bradford he was eligible for severance pay under the CVS severance policy or program, and presented Bradford with the ancillary "Separation Agreement." The Separation Agreement contained a signature line for Bradford and David L. Casey, CVS's Vice President, Human Resources. (Exhibit A).

49.

The Separation Agreement provided to Bradford was ancillary and part of

CVS' employment policies, and, more specifically, CVS' severance policy or program, which incorporates the Severance Agreement by reference. (Exhibit B, lines 1-14)

50.

The Separation Agreement presented to Bradford, like severance agreements provided to other CVS employees, was drafted solely by CVS or a lawyer employed or retained by CVS.

51.

Bradford was not consulted, nor did he in any way participate in the drafting of the Separation Agreement that CVS presented to him after 15 years of employment.

52.

CVS, through its agents Lehman and Allen, presented the terms of the Separation Agreement to Bradford as non-negotiable.

53.

Bradford's bargaining position, or lack thereof, was no different - neither greater nor less than - any other similarly situated CVS employee.

54.

The Separation Agreement was not drafted in clear, comprehensible language.

55.

The fonts in the Separation Agreement were "small print" and less than the size of fonts CVS uses to label prescription medication bottles.

56.

The fonts in the Separation Agreement are equal to or smaller than the fonts on the last line of a standard eye chart.

57.

In drafting the Separation Agreement, CVS did not incorporate principles that form the basis of its Easy Read program.

58.

The Separation Agreement is not written in a manner calculated to be understood by Bradford or the average employee similarly situated to Bradford.

59.

CVS' Separation Agreement contained a "General Release of Claims," and "Covenant Not to Sue" in paragraphs eight and nine, respectively.

CLAIMS FOR RELIEF

29 U.S.C. § 216(b)

UNPAID OVERTIME COMPENSATION

## COUNT I

60.

Bradford repeats and re-alleges each and every paragraph set forth in paragraphs 1 to 54 as if fully set forth at length herein.

61.

CVS repeatedly and willfully violated the provisions of §7 and §15(a)(2) of the FLSA, 29 U.S.C. § 207 and § 215(a)(2) by employing individuals, including Bradford, engaged in commerce or in the production of goods for commerce, for work weeks longer than 40 hours without compensating such employees for their employment in excess of such hours at rates not less than one and one-half times the regular rates at which they were employed.

62.

Bradford, as well as those similarly situated to him, was regularly compelled to work more than 40 hours per week but were not paid overtime compensation as required under the FLSA.

63.

Bradford, and those similarly situated to him, were not exempt employees under the FLSA; thus, CVS was required to pay them overtime compensation for all hours worked each week in excess of 40.

64.

CVS' violations of the overtime pay requirements set forth in the FLSA were systematic, voluntary and willful.

65.

CVS owes Bradford, and those similarly situated to him, overtime pay for work performed but not compensated in an amount to be determined in this collective action, plus liquidated damages in an equal amount pursuant to 29 U.S.C. § 216(b).

66.

Within the preceding four years, CVS, an employer subject to the provisions of the FLSA, repeatedly violated the provisions of §§ 11(c) and 15(a)(5) of the FLSA, 29 U.S.C. §§ 211(c) and 215(a)(5) and the Department of Labor regulations at 29 C.F.R. § 516 by failing to make, keep and preserve adequate and accurate records of the persons employed and of the wages, hours, and other conditions and practices of employment maintained by them.

67.

Bradford and those similarly situated to him are entitled to relief shifting the burden of proof to CVS with regard to the amount of overtime worked due to the violation of §§ 11(c) and 15(a)(5) of the FLSA, 29 U.S.C. §§ 211(c) and 215(a)(5) and the Department of Labor regulations at 29 C.F.R. § 516.

## COUNT II

### DECLARATORY JUDGMENT

68.

Bradford incorporates the allegations contained in paragraphs 1 through 62 of this complaint is though the same were fully set forth at length herein.

## JURISDICTIONAL BASIS FOR A DECLARATORY JUDGMENT

69.

The Declaratory Judgment Act, in turn, provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act, however, "does not impose a higher threshold for justiciability than the basic Article III requirement that federal courts shall only decide cases and controversies.

70.

Because FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the FLSA and thwart the legislative policies it was designed to effectuate, an actual controversy exists between the parties as to whether CVS violated the FLSA by conditioning the payment of severance pay on Bradford's waiver of his rights under the FLSA.

71.

This Court has authority to adjudicate the declaratory judgment claims in this case under 28 U.S.C. § 2201 because there exists an independent basis for subject matter jurisdiction, *i.e.* pursuant to 29 U.S.C. § 201 *et seq.*

SPECIFIC ISSUES ON WHICH A DECLARATORY JUDGMENT IS SOUGHT

**1. THAT PART OF THE SEPARATION AGREEMENT PROVIDING FOR A CONTRACTUAL WAIVER OF COVERAGE OF THE FLSA AND WAIVING PAYMENT AND/OR THE RIGHT TO RECOVER OVERTIME IS VOID AS A MATTER OF LAW**

72.

CVS' Separation Agreement contained paragraphs entitled "General Release of Claims," "Covenant Not to Sue," and "No FMLA or FLSA Claims," in paragraphs eight, nine, and ten, respectively. (Exhibit A, pg. 2, ¶¶ 8, 9 and 10, lines 1-45).

73.

The "General Release of Claims" provided, in pertinent part, that:

> [Bradford] hereby releases and forever discharges CVS Caremark Corporation and each of its divisions, affiliates, subsidiaries and operating companies, and the respective officers, directors, employees, agents and affiliates of each of them (collectively, the "Released Parties") from any and all causes of action, lawsuits, proceedings, complaints, charges, debts contracts,

- 23 -

> judgments, damages, claims, and attorneys fees against the Released Parties, whether known or unknown, which [Bradford] ever had, now has or which [Bradford] or [Bradford]'s heirs, executors, administrators, successors or assigns may have prior to the date this Agreement is signed by [Bradford], due to any matter whatsoever relating to [Bradford]'s employment, compensation, benefits, and/or termination of[Bradford]'s employment with CVS Caremark (collectively, the "Released Claims").

(Exhibit A, pg. 2, ¶ 8, lines 1-8).

74.

Paragraph eight of the Separation Agreement, to the extent it purports to release any FLSA claims for overtime compensation is void as a matter of law.

75.

The "General Release of Claims" set forth in Paragraph 8 also provided that Bradford release and forever discharge CVS Caremark Corporation and each of its divisions, affiliates, subsidiaries and operating companies, and the respective officers, directors, employees, agents and affiliates of each of them (collectively, the "Released Parties") from any claim that any of the Released Parties violated any other federal, state or local statute, law, regulation or ordinance that was not specifically identified in the "General Release of Claims." (Exhibit A, pg. 2, ¶ 8,

- 24 -

lines 12- 13).

76.

To the extent that the release of "any claim that any of the Released Parties violated any other federal, state or local statute, law, regulation or ordinance" includes or is intended to include FLSA overtime claims, any putative plaintiff in this action is entitled to a declaratory judgment that said provision is void as a matter of law.

77.

Paragraph Nine, entitled "No  Pending Actions; Covenant Not to Sue," provides that employees agree "not to initiate or file, or cause to be initiated or filed, any action, lawsuit, complaint or proceeding asserting any of the Released Claims against any of the Released Parties." (Exhibit A, pg. 2, ¶ 9, lines 26-27).

78.

To the extent that the provision of paragraph nine under which CVS employees agree "not to initiate or file, or cause to be initiated or filed, any action, lawsuit, complaint or proceeding asserting any of the Released Claims against any of the Released Parties" includes or is intended to include FLSA overtime claims, any putative plaintiff in this action is entitled to a declaratory judgment

- 25 -

that said provision is void as a matter of law.

## 2. THE COLLECTIVE ACTION WAIVER IS VOID AS A MATTER OF LAW

79.

Paragraph Nine makes clear that CVS intends for Paragraph Eight as a release of claims and actions employees could otherwise bring under the Fair Labor Standards Act:

> Employee further agrees not to be a member of any class or collective action in any court or in any arbitration proceeding seeking relief against the Released Parties based on claims released by this Agreement, and that even if a court or arbitrator rules that Employee may not waive a claim released by this Agreement, Employee will not accept any money damages or other relief.

(Exhibit A, pg. 2, ¶ 9, lines 27-30).

80.

On June 11, 1938, the Senate and House issued a Conference Report, with the collective action provision written into § 216(b), together with back wages, liquidated damages, costs, and attorney's fees. H.R. Rep. No. 2738, 75th Cong., 3d. Sess., at 1to 12 (1938).

81.

The Conference Report and all of the other legislative history establishes Congress enacted the FLSA to aid unprotected, unorganized and the lowest paid employees who lacked significant bargaining power. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697-708, n.18 (1945) (citing 81 Cong.Rec. 7672, 7885; 82 Cong.Rec. 1386, 1395, 1491, 1505; 83 Cong.Rec. 7283, 7298, 9260, 9265; H.Rep. 1452, 75th Cong. 1st Sess., pp. 3-4 (1937)).

82.

In enacting the FLSA, it is beyond dispute that Congress intended to protect those workers who were not benefited by collective bargaining agreements by providing those workers with the right to collectively assert their rights under the FLSA.

83.

Section 216(b)'s collective action remedy is the mechanism chosen by Congress to effectuate congressional policy in the FLSA to "aid unprotected, unorganized and lowest paid employees who lacked significant bargaining power. . ."

84.

The debate after the Conference Report and before enactment of the FLSA left no doubt that inclusion of the collective action provision was a substantive, critical, and non-waivable part of the remedies in § 216(b) to encourage collective action FLSA actions due to unequal bargaining power of those the statute was designed to protect and to limit the amount and cost of administrative enforcement by the federal government. 83 Cong. Rec. 9264 (1938); *Morgan v. Family Dollar Stores*, 551 F.3d 1233, 1264 (11th Cir. 2008) (The first purpose of an FLSA collective action is to reduce the burden on the plaintiff); Grayson, 79 F.3d at 1109, Exhibit A to Grayson opinion (*"Congress has stated its policy* that [FLSA] plaintiffs should have the opportunity to proceed collectively. A collective action allows [FLSA] age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.")

85.

The United States Constitution gives Congress sole authority to prescribe rules of procedure for lower federal courts, i.e. all federal courts other than the

United States Supreme Court.

86.

Congress has not delegated authority to federal courts to prescribe procedure for FLSA collective actions.  On the contrary, by excluding the FLSA's collective action provision from Rule 23, F.R.CIV.P., Congress made it clear that the FLSA collective action provision is substantive and, like the other remedies set forth in § 216(b),  not subject to contractual waiver.

87.

Because Congress declined to delegate its authority over procedure for FLSA collection actions, the United States Supreme Court has held that the FLSA collective action remedy is an affirmative right, a policy of Congress that must be "enforced to the full extent of its terms." *Hoffman-LaRoche v. Sperling*, 493 U.S. at 165, 170 (1989).

88.

Consistent with the Supreme Court's decision in *Hoffman-LaRouche* and the FLSA's test and legislative history, the United States Department of Labor takes the position that § 216(b) grants employees a substantive right to participate in collective adjudication of their overtime claims, provided they "opt-in" through a

- 29 -

written consent filed with the court.

89.

The FLSA collective action waiver, *i.e.* that part of paragraph nine of the CVS Separation Agreement under which Bradford, CVS employees and putative plaintiffs in this action "agreed" "not to be a member of any class or collective action in any court or in any arbitration proceeding seeking relief against [CVS] based on claims released . . . " (Exhibit A, pg. 2, ¶ 9, lines 27-29) is void as  a matter of law and entitles all putative plaintiffs to this action, and each of them, to a declaratory judgment that said provision is void as a matter of law.

90.

The FLSA collective action waiver, *including* that part of paragraph nine of the CVS Separation Agreement under which Bradford, other former CVS employees, and putative plaintiffs in this action "agreed" that "even if a court or arbitrator rules that Employee may not waive a claim released by this Agreement, [they] will not accept any money damages or other relief" (Exhibit A, pg. 2, ¶ 9, lines 29-30)  entitles all putative plaintiffs to this action, and each of them, to a declaratory judgment that said provision is void as a matter of law.

91.

The FLSA collective action waiver, *including* that part of paragraph nine of the CVS Separation Agreement under which Bradford, other former CVS employees and putative plaintiffs in this action "agreed" to "promptly reimburse [CVS] for any legal fees [CVS] incurs" in defending an FLSA collective action (Exhibit A, pg. 2, ¶ 9, lines 30-31) is void as a matter of law and entitles all putative plaintiffs to this action, and each of them, to a declaratory judgment that said provision is void as a matter of law.

### 3. THE WAIVER OF EMPLOYEE'S RIGHT TO ENFORCE THE FLSA THROUGH THE UNITED STATES DEPARTMENT OF LABOR IS VOID AS A MATTER OF LAW

92.

Paragraph nine of the Separation Agreement requires former CVS employees who are putative plaintiffs in this action to waive meaningful enforcement by the United States Department of Labor of any unpaid overtime claims by purporting to designate "information concerning [CVS'] personnel, *including skills, abilities and duties of [CVS'] employees, wage and benefit structure. . ."* as "Confidential Information," and by limiting Employee's cooperation with federal, state and local government agencies to those agencies which enforce

discrimination laws, thereby precluding putative plaintiffs from voluntarily cooperating with any United States Department of Labor investigation of unpaid overtime.

93.

To the extent that the definition of "Confidential Information" in the Separation Agreement (Exhibit A, pg. 3, ¶ 14(a), lines 36-46) precludes putative plaintiffs from seeking meaningful relief for an employer's failure to pay overtime due under the FLSA, any and all putative plaintiffs in this action are entitled to a declaratory judgment that said provision is void as a matter of law pursuant to the FLSA and void as a matter of law, at least to CVS employees in Georgia, pursuant to Ga. Code Ann. § 13-8-50 et seq.

94.

Paragraph nine requires putative plaintiffs who signed the Separation Agreement or a similar document form to waive meaningful enforcement by the United States Department of Labor or through private litigation in a U.S. District Court of any claims involving FLSA retaliation by precluding putative plaintiffs from recovering any relief for FLSA retaliation:

Moreover, nothing in this paragraph is intended to or shall interfere with Employee's right to participate in a proceeding with any appropriate federal, state or local government agency enforcing *discrimination laws*, nor shall this Agreement prohibit Employee from cooperating with any such agency in its investigation. Employee shall not, however, be entitled to any relief, recovery or monies in connection with any Released Claim brought against any of the Released Parties, regardless of who filed or initiated any such complaint, charge or proceeding. (Emphasis supplied)

95.

The putative plaintiffs in this action are entitled to a declaratory judgment in that the above cited provision (Exhibit A, pg. 2, ¶ 9, lines 33-37) is void as a matter of law.

### 4. THE PROVISIONS OF THE SEPARATION AGREEMENT THAT CONDITION RECEIPT OF EMPLOYEE BENEFITS ON AN EMPLOYEE'S "AGREEMENT" NOT TO ACCEPT OVERTIME AWARDED BY A COURT ARE VOID AS A MATTER OF LAW

96.

Paragraph Nine requires Bradford and any CVS employee signing the same Separation Agreement, to agree not to collect overtime or other compensation that the employee was otherwise entitled to under the FLSA even if that part of the Separation Agreement waiving FLSA claims was invalidated by a federal court.

- 33 -

97.

Paragraph Nine requires any CVS employee signing the same Separation Agreement to pay CVS' attorneys' fees if Bradford accepted overtime compensation from a collective action even if a federal court had invalidated the waiver of overtime claims contained in the Separation Agreement.

98.

That part of paragraph nine that condition receipt of employee benefits on an employees' agreement not to accept overtime awarded by a court is void as a matter of law.

## COUNT III

### BREACH OF EMPLOYMENT AGREEMENT
### (BRADFORD)

99.

Bradford incorporates the allegations contained in paragraphs 1 through 93 of this complaint as though the same were fully set forth at length herein.

100.

CVS offers employees who qualify for severance benefits according to the company's employment policies or manual or program if the employee signs a

"Separation Agreement" with a General Release, Covenant Not to Sue, and Confidentiality, among other things. (Exhibits A and B)

101.

CVS makes severance payments on a weekly, bi-weekly or monthly basis depending on the employee's current pay cycle. (Exhibit B, lines 10-11)

102.

The severance payments made pursuant to CVS' policy or program are made by check or direct deposit and are targeted for the Friday following the pay period. (Exhibit B, lines 10-11)

103.

CVS makes payments directly to healthcare and/or dental carrier for the applicable severance period. (Exhibit B, lines 13-14)

104.

CVS' severance policy or program is an additional compensation plan offered by an employer and impliedly accepted by Bradford by remaining in employment. CVS' severance plan or program as part of Bradford's employment agreement with CVS or constitutes a separate contract between Bradford and CVS, whether the plan is public or private, and whether or not Bradford

- 35 -

contributed to the plan.

105.

That part of Bradford's employment agreement with CVS, like all contracts, is subject to the implied covenant of good faith and fair dealing.

106.

Bradford was entitled to severance under his employment agreement with CVS and, at the time of his termination, stood ready and willing to sign a valid and enforceable agreement containing a release of claims against CVS along with restrictive covenants.

107.

The agreement, whether ancillary to Bradford's employment agreement with CVS or a separate contract CVS tendered to Bradford was void as a matter of law and constitutes a violation of the implied covenant of good faith and fair dealing because it required Bradford to release claims under the FLSA.

108.

By tendering to Bradford an ancillary agreement that required him to waive FLSA coverage and release FLSA claims entitling him to payment of overtime compensation, CVS breached its employment agreement with Bradford and, more

particularly, the implied covenant of good faith and fair dealing present in all contracts.

109.

Alternatively, and to the extent that the Separation Agreement constituted an offer to Bradford from CVS, Bradford was entitled to a severance agreement that did not discriminate against him in violation of 29 USC § 215(a)(3) by requiring him to relinquish his rights under the FSLA.

110.

In breaching its employment agreement with Bradford, CVS has "acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense," as those terms have been interpreted under GA. CODE ANN. § 13-6-11.

111.

As a direct and proximate cause of CVS' breach of the employment agreement, Bradford has suffered financial losses, which include, without limitation,

    a.    Severance payments of $5,392.30 per month for 20 weeks, a total sum not less than $25,000.00;

b.      Interest at the legal rate on each severance payment CVS has failed to make;

c.      Attorneys' fees to recover the severance at a rate not less than $395.$\frac{00}{}$ per hour, together with costs.

## COUNT IV

### EQUITABLE RELIEF

### REFORMATION OR MODIFICATION AND SPECIFIC PERFORMANCE

### PURSUANT TO 29 USC §§ 216(B), 215(A)(3)

112.

Bradford incorporates the allegations contained in paragraphs 1 through 106 of this complaint as though the same were fully set forth at length herein.

113.

This Court has authority to award equitable relief in this case pursuant to 29 USC § 216(b).

114.

Bradford does not have an adequate remedy at law.

115.

Under 29 USC § 215(a)(3), CVS is prohibited from discriminating against

- 38 -

Bradford because he has sought to recover unpaid overtime or otherwise asserted his rights under the FLSA.

116.

Section 216(b) gives this Court authority to award "such legal and equitable relief as may be appropriate to effectuate the purposes of Section 215(a)(3). . . "

117.

CVS' attempt to use its leverage to deny severance benefits to employees who refuse to relinquish their rights under the FLSA constitutes an "adverse employment action" under § 215(a)(3) because such conduct is harmful to the point it could well dissuade a reasonable employee from making or supporting a claim to recover overtime due under the FLSA.

## COUNT IV
### EQUITABLE RELIEF – GEORGIA LAW

118.

Bradford incorporates the allegations contained in paragraphs 1 through 117 of this complaint as though the same were fully set forth at length herein.

119.

At the time the Bradford and CVS entered into the employment agreement

providing for severance pay, they did not intend for the separation ancillary to the employment agreement to provide for the release of FLSA claims nor did CVS intend to enter into an agreement —any agreement— that burdens commerce and the free flow of goods in commerce, constitutes an unfair method of competition in commerce, leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce, or causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.

120.

By incorporating provisions that violate the FLSA into the Separation Agreement ancillary to the parties' employment agreement, CVS made a mistake of law in effectuating the terms of its employment agreement with Bradford.

121.

CVS' mistake of law can be shown by clear, unequivocal and decisive evidence.

122.

In addition, the separation ancillary to the parties' employment agreement

contains restrictive covenants and was intended, at least in part, to protect CVS'

interest in property, confidential information, customer good will, business

relationships, employees, or any other economic advantages that Bradford and

the Collective Action Members obtained for the benefit of CVS or to which

Bradford and the Collective Action Members have gained access in the course of

their relationship with CVS.

123.

Because the agreement ancillary to the parties' employment agreement

contains restrictive covenants, it is governed by GA. CODE ANN. § 13-8-50 *et seq.*

and must be construed to comport with only the *reasonable* intent and

expectations of the parties to the covenant and in favor of providing *reasonable*

protection to all *legitimate* business interests of CVS.

124.

Because the Separation Agreement provided to Bradford and incorporated

into the terms of the employment agreement between Bradford and CVS impairs

the free flow of commerce, it is void or voidable pursuant GA. CONST. ART. III, §

VI, ¶ V(c)(1), GA. CODE ANN. §§ 13-8-1, 13-8-2(a)(1) and (2).

- 41 -

125.

In addition, the public policy of the State of Georgia as set forth in GA. CONST. ART. III, § VI, ¶ V(c)(1), does not permit contracts which may have the effect of or which is intended to have the effect of defeating or lessening competition.

126.

By incorporating an ancillary agreement that violates the FLSA, the employment agreement between Bradford and CVS has the effect of violating Georgia law by defeating or lessening competition by giving CVS an advantage over its competitors who comply with the FLSA and do not enter into contractual agreements with employees that waive FLSA coverage and release them from their obligation under the FLSA to pay overtime.

127.

Pursuant to its supplemental jurisdiction and GA. CODE ANN. § 23-2-21, this Court has authority to relieve mistakes of law in the employment agreement between the parties and/or the ancillary Separation Agreement.

128.

To the extent the employment agreement and the ancillary separation

agreement are subject to GA. CODE ANN. § 13-8-50 *et seq.*, the provisions in those agreements cannot be construed or interpreted to allow or to make enforceable any restraint of trade or commerce that is otherwise illegal or unenforceable under the Constitution or laws of the United States or under the Georgia Constitution.

129.

Pursuant to GA. CODE ANN. § 13-8-53(d), this Court has broad authority to modify any part of an agreement that contains restrictive covenants so long as the modification by the Court does not render the restrictive covenants more restrictive with regard to the employee.

130.

This Court has authority to issue an equitable decree reforming, modifying and enforcing Bradford's employment agreement due to either a mistake of law by CVS or pursuant to Ga. Code Ann. § 13-8-50 et seq., or both.

131.

Accordingly, under Georgia law, Bradford is entitled to an equitable decree that modifies, or reforms, the ancillary agreement by removing those provisions that violate Georgia law.

- 43 -

**WHEREFORE**, Bradford and the Collective Action Members demand relief as follows:

1.      That process issue and that CVS be served according to law;

2.      Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the Collective Action Members as an FLSA Opt-In Class, apprising them of the pendency of the claims asserted in this action under Section 216(b) of the FLSA, permitting them to assert timely § 216(b) FLSA claims in this action by filing individual Consents to Sue pursuant to § 216(b);

3.      An Order finding that CVS violated §§ 215(a)(2) and (3), and 216(b) of the FLSA;

4.      Judgment in favor of Bradford and all those similarly situated to him and against CVS for unpaid overtime compensation together with liquidated damages;

5.      Pursuant to § 216(b) of the Act, judgment in favor of Bradford and those similarly situated to him and against CVS for reasonable attorneys' fees;

6.      Judgment in favor of Bradford and those similarly situated to him and against the CVS for prejudgment interest;

- 44 -

7.      Judgment in favor of Bradford and those similarly situated to him and against the CVS for all taxable and non-taxable costs;

8.      Judgment in favor of Bradford for breach of contract in an amount to be determined at trial together with equitable decree reforming, modifying and enforcing the employment and ancillary agreement between Bradford and CVS;

9.      Pursuant to the Seventh Amendment to the United States Constitution and Rule 38, F.R.CIV.P., **TRIAL BY JURY** on all claims on which a jury trial is available; and

10.     Such other, further and different relief as this Court deems appropriate.

This 4th day of April, 2012.

By: _____
Stephen M. Katz
Attorney for Plaintiff
Georgia Bar No. 409065



THE KATZ LAW GROUP LLC

4799 Olde Towne Parkway
Marietta, Georgia 30068-4350
Telephone:     770. 988.8181
Facsimile:      770. 988.8182
E-Mail: smkatz@smk-law.com