# SEPARATION AGREEMENT

This Separation Agreement ("Agreement") between Philip Bradford ("Bradford" or "Employee") and CVS Pharmacy, Inc. ("CVS Caremark" or the "Company") shall be effective as of the end of the Revocation Period defined below (the "Effective Date"), so long as the Agreement is also signed by an authorized representative of the Company.

**WHEREAS**, Employee has been employed by CVS Caremark or one of its subsidiaries;

**WHEREAS**, Employee and CVS Caremark desire to enter into an agreement setting forth the terms of the Employee's separation from the Company;

**WHEREAS**, Employee has thoroughly reviewed this Agreement, and has had the opportunity to consult with legal counsel of Employee's choice before signing this Agreement.

**NOW THEREFORE**, in consideration of the covenants below, including but not limited to the General Release of Claims, and for other good and valuable consideration as set forth in this Agreement, Employee and the Company agree as follows:

1. **TERMINATION OF EMPLOYMENT.**
Employee's last date of employment with the Company (the "Separation Date") shall be 1/19/2012. Promptly following the Separation Date, CVS Caremark shall pay Employee any remaining accrued but unused vacation time or paid time off to which Employee may be entitled in accordance with CVS Caremark policy.

2. **SALARY CONTINUATION PAYMENTS.**
Subject to Employee's compliance with the obligations hereunder, CVS Caremark agrees to pay Employee at the rate of $5,392.30 per month during the "Severance Period", which is the twenty (20) week period beginning immediately after the Separation Date. The final day of the Severance Period shall be referred to as the "Severance End Date."

3. **BENEFITS.**
Effective immediately after the Separation Date, Employee may elect to continue Employee's Medical (including prescription), Dental and/or Vision coverage in effect as of the Separation Date pursuant to COBRA. If Employee elects to continue health care coverage under COBRA by completing the required COBRA documents, CVS Caremark shall subsidize such coverage by paying the health insurance provider an amount equal to the current Company contribution for active employees for coverage during the Severance Period or the date on which Employee becomes eligible for health care coverage from another employer, whichever is earlier. After the end of the Severance Period or after Employee becomes eligible for health care coverage from another employer, whichever is earlier, Employee shall be solely responsible for any health insurance Employee elects to obtain and, if eligible, Employee may continue coverage at the full premium rate plus a 2% administrative fee to the extent permitted under COBRA. Employee understands and agrees that CVS Caremark may modify its premium structure, the terms of its Plans, and the coverage of its Plans at any time subject only to applicable law.

4. **STOCK OPTIONS.**
The terms and conditions of Employee's previously-granted stock options shall be governed by the applicable CVS Caremark Corporation Incentive Compensation Plan (the "ICP") and the applicable Stock Option Agreements with Employee.

5. **OUTPLACEMENT ASSISTANCE.**
As part of its severance benefits to Employee, CVS Caremark will provide Employee with a virtual outplacement assistance program.

6. **COMPANY CAR.**
The Employee agrees to maintain in good condition the Company car currently in his possession and to relinquish it to CVS Caremark on or before 1/25/2012. The Employee shall continue to pay the current fee for personal use of the Company car until the vehicle is relinquished to CVS Caremark. The Wheels/PHH Card will be deactivated as of the Separation Date.

7. **NO OTHER PAY OR BENEFITS; SUFFICIENCY OF CONSIDERATION.**
Except as specifically set forth in this Agreement, Employee shall be entitled to no other wages, salary, vacation pay, bonuses, incentive awards, commissions, benefits, stock, restricted stock units, stock options, or any other compensation of any kind, except as required by law. Employee acknowledges that the severance pay and benefits subsidy described in this Agreement are in excess of any earned wages and any other amounts due and owing to Employee, and are good and valuable consideration for the general release of claims and other covenants and terms in this Agreement.

8. **GENERAL RELEASE OF CLAIMS.**
Employee hereby releases and forever discharges CVS Caremark Corporation and each of its divisions, affiliates, subsidiaries and operating companies, and the respective officers, directors, employees, agents and affiliates of each of them (collectively, the "Released Parties") from any and all causes of action, lawsuits, proceedings, complaints, charges, debts contracts, judgments, damages, claims, and attorneys fees against the Released Parties, whether known or unknown, which Employee ever had, now has or which Employee or Employee's heirs, executors, administrators, successors or assigns may have prior to the date this Agreement is signed by Employee, due to any matter whatsoever relating to Employee's employment, compensation, benefits, and/or termination of Employee's employment with CVS Caremark (collectively, the "Released Claims"). The Released Claims include, but are not limited to, any claim that any of the Released Parties violated the National Labor Relations Act, Title VII of the Civil Rights Act of 1964, Sections 1981 through 1988 of Title 42 of the United States Code, the Employee Retirement Income Security Act, the Immigration Reform and Control Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, and/or the Occupational Safety and Health Act; any claim that any of the Released Parties violated any other federal, state or local statute, law, regulation or ordinance; any claim of unlawful discrimination of any kind; any public policy, contract, tort, or common law claim; any claim for costs, fees, or other expenses including attorney's fees incurred in these matters. For the avoidance of doubt, this release includes any claims by Employee under the following laws: the West Virginia Human Rights Act, the New Jersey Law Against Discrimination, or the New Jersey Conscientious Employee Protection Act. Notwithstanding the foregoing, this release does not include any rights that the Employee cannot lawfully waive, and will not release any rights Employee has to (a) defense and indemnification from CVS Caremark or its insurers for actions taken by Employee in the course and scope of Employee's employment with CVS Caremark; (b) claims, actions, or rights arising under or to enforce the terms of this Agreement; and/or (c) vested benefits under any retirement or pension plan and/or deferred compensation plan.

9. **NO PENDING ACTIONS; COVENANT NOT TO SUE.**
Employee represents that as of the date Employee signs this Agreement, Employee has not filed or initiated, or caused to be filed or initiated, any complaint, claim, action or lawsuit of any kind against any of the Related Parties in any federal, state, or local court or agency. Employee agrees not to initiate or file, or cause to be initiated or filed, any action, lawsuit, complaint or proceeding asserting any of the Released Claims against any of the Released Parties. Employee further agrees not to be a member of any class or collective action in any court or in any arbitration proceeding seeking relief against the Released Parties based on claims released by this Agreement, and even if a court or arbitrator rules that Employee may not waive a claim released by this Agreement, Employee will not accept any money damages or other relief. Employee agrees to promptly reimburse the Company for any legal fees that the Company incurs as a result of any breach of this paragraph by Employee. Nothing in this Agreement is intended to or shall interfere with Employee's right to challenge the Company's compliance with the waiver requirements of the Age Discrimination Act, as amended by the Older Workers Benefit Protection Act. Moreover, nothing in this paragraph is intended to or shall interfere with Employee's right to participate in a proceeding with any appropriate federal, state or local government agency enforcing discrimination laws, nor shall this Agreement prohibit Employee from cooperating with any such agency in its investigation. Employee shall not, however, be entitled to receive any relief, recovery or monies in connection with any Released Claim brought against any of the Released Parties, regardless of who filed or initiated any such complaint, charge or proceeding.

10. **NO FMLA OR FLSA CLAIMS.**
Employee acknowledges that the Company has provided Employee with any leave to which Employee may or may have been entitled under the Family and Medical Leave Act. Employee represents that Employee is not aware of any facts that would support a claim by Employee against any of the Released Parties for any violation of the Family and Medical Leave Act. Employee further acknowledges that Employee has been properly paid for all time worked and is unaware of any facts that would support a claim by Employee against any of the Released Parties for any claim of unpaid overtime or any other violation of the Fair Labor Standards Act.

11. **UNDERSTANDING OF AGREEMENT; ADVICE OF COUNSEL.**
Employee acknowledges and confirms that Employee has entered into this Agreement of Employee's own free will, without duress or coercion. Employee acknowledges that Employee has read and fully understands the meaning and intent of this Agreement and is competent to execute it. The Company hereby advises Employee to seek the advice of legal counsel concerning this Agreement before signing this Agreement, and Employee represents that Employee has had the opportunity to do so prior to signing this Agreement.

12. **TIME TO CONSIDER AND REVOKE AGREEMENT.**
Employee shall have twenty-one (21) days from the date of receipt (the "Consideration Period") to consider whether to enter into this Agreement. Any modifications to this Agreement, whether material or immaterial, will not restart the Consideration Period. If Employee chooses to sign and thereby accept this Agreement, Employee may revoke the acceptance within seven (7) calendar days of the date on which Employee signed the Agreement (the "Revocation Period"). To revoke the acceptance of the Agreement, Employee must send written notice stating that " I revoke my acceptance of the Separation Agreement," or words to that effect, to Mr. David L. Casey, Vice President Human Resources, or his successor, at the address listed below, before the end of the Revocation Period. This Agreement shall take effect on the day following the expiration of the Revocation Period (the "Effective Date"). Employee agrees that, promptly after signing this Agreement, Employee shall send the entire original signed agreement to Mr. David L. Casey, VP Human Resources, One CVS Drive, Woonsocket, RI 02895.

**13. OLDER WORKERS BENEFIT PROTECTION ACT INFORMATION.**

(a) In the Company's desire to be in compliance with the Older Workers Benefit Protection Act ("OWBPA"), the Company advises Employee as follows. Employee has the opportunity to evaluate the terms of this Agreement for not less than 21 days prior to Employee's execution of this Agreement. Should Employee decide not to use the full 21 days, then Employee knowingly and voluntarily waives any claim that Employee was not given that period of time or did not use the entire 21 days to consult an attorney or consider this Agreement. Employee is hereby advised to consult with an attorney prior to executing this Agreement. This Agreement constitutes written notice that the Employee has been advised to consult with an attorney prior to executing this Agreement and that the Employee has carefully considered other alternatives to executing this Agreement.

(b) By signing this Agreement, Employee represents and certifies that:

  i) Employee is relying solely upon the contents of this Agreement and is not relying on any other representations whatsoever of the Released Parties as an inducement to enter into this Agreement.

  ii) Employee's execution of this Agreement is a representation that Employee (A) has read this Release, (B) has been provided a full and ample opportunity to study it, including a period of at least 21 days within which to consider it, (C) has been advised in writing to consult with an attorney prior to signing it, and (D) is signing it voluntarily with full knowledge that it is intended, to the maximum extent permitted by law, as a complete release and waiver of any and all claims.

  iii) Without limiting the scope of this Agreement in any way, this Agreement constitutes a knowing and voluntary waiver of any and all rights or claims that exist or that Employee has or may claim to have under the Federal Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act of 1990 ("OWBPA"), which is set forth at 29 U.S.C. § 621, et seq. This Agreement does not govern any rights or claims that may arise under the ADEA after the date this Agreement is signed by Employee.

**14. EMPLOYEE COVENANTS.**
Employee acknowledges, represents and agrees as follows:

(a) **NON-DISCLOSURE OF CONFIDENTIAL INFORMATION.**
During the course of Employee's employment with CVS Caremark or any of its subsidiaries or affiliates, Employee has learned and had access to valuable non-public information concerning CVS Caremark Corporation and its predecessors, related entities, operating companies, subsidiaries, and affiliates (such entities hereafter referred to as the "Corporation") (such information, "Confidential Information"). For purposes of this Agreement, Confidential Information includes, but is not limited to, the Corporation's business plans, real estate plans and strategies, contracts, financial information, sales and marketing information, pharmacy policies and practices, information concerning the Corporation's personnel, including the skills, abilities and duties of the Corporation's employees, wage and benefit structures, succession plans, information concerning affirmative action plans or planning, information concerning vendors and suppliers, information pertaining to lawsuits and charges, IS programs, applications, strategic plans and information, trade secrets, and other information which could affect the Corporation's business. Employee has not, as of the date Employee signs this Agreement, disclosed to any third party or used, except as required in the course of performing work for CVS Caremark, any Confidential Information. Employee shall not disclose to any third party or use for himself/herself or anyone else any Confidential Information without the prior written authorization of CVS Caremark's Chief Human Resources Officer ("CHRO").

(b) **NON-SOLICITATION AND NON-HIRE OF EMPLOYEES.**
Employee will not, directly or indirectly, for 12 months following the Separation Date: (i) solicit, cause, induce, or encourage, or attempt to solicit, cause, induce, or encourage, any then-current employee of the Corporation to leave his or her employment; (ii) hire or otherwise engage the services of any then current employee of the Corporation or any individual who was employed by the Corporation in the six (6) months preceding the termination of Employee's employment; or (iii) assist, cause, induce or encourage, or attempt to assist, cause, induce or encourage, any third party to take any of the actions described in subsections (i) or (ii) above.

(c) **RETURN OF PROPERTY.**
On or before the Separation Date Employee shall return to CVS Caremark all property of the Corporation in Employee's control or possession, including but not limited to the originals and copies of any information provided to or acquired by Employee in connection with the performance of work for the Corporation, including but not limited to all files, correspondence, communications, memoranda, e-mails, slides, records, and all other documents, no matter how produced or reproduced, all computer equipment, programs and files, and all office keys and access cards, it being hereby acknowledged that all of said items are the sole and exclusive property of the Corporation.

(d) **NON-DISPARAGEMENT.**
Employee will not make any statements that disparage the business or reputation of the Corporation, and/or any officer, director or employee of the Corporation. Notwithstanding the foregoing, nothing in this Agreement shall prohibit Employee from (i) making truthful statements or disclosures that are required by applicable law, regulation or legal process; or (ii) requesting or receiving confidential legal advice.

(e) **COOPERATION.**

i) In the event Employee receives a subpoena, deposition notice, interview request, or any other inquiry, process or order relating to any civil, criminal or administrative investigation, suit, proceeding or other legal matter relating to the Corporation from any investigator, attorney or any other third party, Employee agrees to promptly notify the Company's General Counsel by telephone and in writing. Without limiting the generality of the preceding sentence, in the event Employee receives a subpoena, deposition notice, interview request, or any other inquiry, process or order which requires or may reasonably be construed to require Employee to produce Confidential Information, Employee shall promptly: (a) notify the Company's General Counsel of the item, document, or information sought by such subpoena, deposition notice, interview request, or other inquiry, process or order; (b) furnish the Company's General Counsel with a copy of said subpoena, deposition notice, interview request, or other inquiry, process or order; and (c) provide reasonable cooperation with respect to any procedure that the Company may initiate to protect Confidential Information or other interests. If the Company objects to the subpoena, deposition notice, interview request, inquiry, process, or order, Employee shall cooperate to ensure that there shall be no disclosure until the court or other applicable entity has ruled upon the objection, and then only in accordance with the ruling so made. Nothing in this Agreement shall be construed to prohibit Employee from testifying truthfully in any legal proceeding.

ii) Employee shall cooperate fully with the Corporation and its legal counsel in connection with any action, proceeding, or dispute arising out of matters with which Employee was directly or indirectly involved while serving as an employee of the Corporation. This cooperation shall include, but shall not be limited to, meeting with, and providing information to, the Corporation and its legal counsel, maintaining the confidentiality of any past or future privileged communications with the Corporation's legal counsel (outside and in-house), and making himself/herself available to testify truthfully by affidavit, in depositions, or in any other forum on behalf of the Corporation. CVS Caremark agrees to reimburse Employee for any reasonable and necessary out-of-pocket costs associated with such cooperation.

15. **BREACH OF EMPLOYEE COVENANTS AND INJUNCTIVE RELIEF.**
Without limiting the remedies available to CVS Caremark, Employee acknowledges that a breach by Employee of any of the covenants set forth above in the section entitled Employee Covenants will result in irreparable injury to some or all of the Corporation for which there is no adequate remedy at law, that monetary relief will be inadequate, and that, in the event of such a material breach or threat thereof, CVS Caremark shall be entitled to obtain, in addition to any other relief that may be available, a temporary restraining order and/or a preliminary or permanent injunction, restraining Employee from engaging in activities prohibited by any of the sections of this Agreement identified in this paragraph, as well as such other relief as may be required specifically to enforce any of the sections of this Agreement identified in this paragraph, without the payment of any bond. In the event that a court issues a temporary restraining order, preliminary injunction, permanent injunction, or issues any other similar order enjoining Employee from breaching this Agreement, or awards CVS any damages due to Employee's breach of this Agreement, Employee agrees promptly to reimburse the Company for all reasonable attorneys fees incurred by CVS in connection with obtaining such equitable relief or damages.

16. **NONADMISSION OF WRONGDOING.**
Employee and CVS Caremark agree that neither this Agreement nor the furnishing of consideration hereunder shall be deemed or construed at any time for any purpose as an admission by either party of any liability, wrongdoing or unlawful conduct, and Employee and CVS Caremark expressly deny any such liability, wrongdoing or unlawful conduct.

17. **GOVERNING LAW.**
This Agreement shall be governed by and conformed in accordance with the laws of the State of Rhode Island without regard to its conflict of laws provisions. Any actions brought to enforce the terms of this Agreement shall be brought in a court of competent jurisdiction located in the State of Rhode Island.

18. **JURY TRIAL WAIVER.**
Employee and CVS Caremark irrevocably and unconditionally waive the right to a trial by jury in any action or proceeding seeking to enforce, or alleging the breach of, any provision of this Agreement.

19. **COUNTERPARTS.**
This Agreement may be executed in counterparts and each counterpart will be deemed an original.

20. **SECTION HEADINGS.**
Section headings contained in this Agreement are for convenience of reference only and shall not affect the meaning of any provision herein.

21. **SEVERABILITY.**
If any of the provisions of the section entitled Employee Covenants are deemed unenforceable by a court of competent jurisdiction because they are overly broad, then the court shall have the ability to modify the offending provision in order to make it enforceable. Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction and if such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the parties.

22. **RESPONSIBILITY FOR TAXES.**
All payments set forth in this Agreement are subject to applicable withholdings and deductions. Employee acknowledges and agrees that Employee is solely responsible for all taxes on the payments and benefits described in this Agreement. The parties intend for the terms of this Agreement to be paid in such a manner to be compliant with Section 409A of the Internal Revenue Code of 1986, as amended ("Code Section 409A"), or, as applicable, to be exempt from Code Section 409A (including as necessary for the salary continuation payments to satisfy the involuntary separation pay exception set forth in Treasury Regulation Section 1.409 A -1 (b )(9)).
Notwithstanding the foregoing, CVS Caremark makes no representations or guarantees with respect to the taxation of any of the payments or benefits set forth herein, including taxation pursuant to Code Section 409A.

23. **DEBTS TO THE COMPANY.**
Employee acknowledges that, in the event Employee is indebted to the Company or an affiliate thereof, the severance payments provided for in the Agreement may be reduced, offset, withheld or forfeited up to the amount of the debt.

24. **ENTIRE AGREEMENT.**
This Agreement; the ICP; and any compensation, equity or benefit plan or agreement referred to herein set forth the entire agreement between the parties hereto and fully supersede any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement. Employee has not relied on any representations, promises or agreements of any kind made to Employee in connection with Employee's decision to accept the terms of this Agreement, except for the representations, promises and agreements herein. Any modification to this Agreement must be in writing and signed by Employee and CVS Caremark's CHRO or her authorized representative.

**IN WITNESS WHEREOF**, the parties knowingly and voluntarily executed this Separation Agreement as of the dates set forth below.

Philip Bradford
0104600

**CVS PHARMACY, INC.**

_____

By:_____
   David L. Casey
   Vice President, Human Resources

Date:_____

Date:_____

## SEPARATION AGREEMENT

This Separation Agreement ("Agreement") between Philip Bradford ("Bradford" or "Employee") and CVS Pharmacy, Inc. ("CVS Caremark" or the "Company") shall be effective as of the end of the Revocation Period defined below (the "Effective Date"), so long as the Agreement is also signed by an authorized representative of the Company.

WHEREAS, Employee has been employed by CVS Caremark or one of its subsidiaries;

WHEREAS, Employee and CVS Caremark desire to enter into an agreement setting forth the terms of Employee's separation from the Company;

WHEREAS, Employee has thoroughly reviewed this Agreement, has entered into it voluntarily, and has had the opportunity to consult with legal counsel of Employee's choice before signing this Agreement.

NOW THEREFORE, in consideration of the covenants below, including but not limited to the General Release of Claims, and for other good and valuable consideration as set forth in this Agreement, Employee and the Company agree as follows:

1. **TERMINATION OF EMPLOYMENT.**
Employee's last date of employment with the Company (the "Separation Date") shall be 1/19/2012. Promptly following the Separation Date, CVS Caremark shall pay Employee any remaining accrued but unused vacation time or paid time off to which Employee may be entitled in accordance with CVS Caremark policy.

2. **SALARY CONTINUATION PAYMENTS.**
Subject to Employee's compliance with the obligations hereunder, CVS Caremark agrees to pay Employee at the rate of $5,392.30 per month during the "Severance Period", which is the twenty (20) week period beginning immediately after the Separation Date. The final day of the Severance Period shall be referred to as the "Severance End Date".

3. **BENEFITS.**
Effective immediately after the Separation Date, Employee may elect to continue Employee's Medical (including prescription), Dental, and/or Vision coverage in effect as of the Separation Date pursuant to COBRA. If Employee elects to continue health care coverage under COBRA by completing the required COBRA documents, CVS Caremark shall subsidize such coverage by paying the health insurance provider an amount equal to the current Company contribution for active employees for coverage during the Severance Period or the date on which Employee becomes eligible for health care coverage from another employer, whichever is earlier. After the end of the Severance Period or after Employee becomes eligible for health care coverage from another employer, whichever is earlier, Employee shall be solely responsible for any health insurance Employee elects to obtain, and, if eligible, Employee may continue coverage at the full premium rate plus a 2% administrative fee to the extent permitted under COBRA. Employee understands and agrees that CVS Caremark may modify its premium structure, the terms of its Plans, and the coverage of the Plans at any time subject only to applicable law.

4. **STOCK OPTIONS.**
The terms and conditions of Employee's previously-granted stock options shall be governed by the applicable CVS Caremark Corporation Incentive Compensation Plan (the "ICP") and the applicable Stock Option Agreements with Employee.

5. **OUTPLACEMENT ASSISTANCE.**
As part of its severance benefits to Employee, CVS Caremark will provide Employee with a virtual outplacement assistance program.

6. **COMPANY CAR.**
The Employee agrees to maintain in good condition the Company car currently in his possession and to relinquish it to CVS Caremark on or before 1/25/2012. The Employee shall continue to pay the current fee for personal use of the Company car until the vehicle is relinquished to CVS Caremark. The Wheels/PHH Card will be deactivated as of the Separation Date.

7. **NO OTHER PAY OR BENEFITS; SUFFICIENCY OF CONSIDERATION.**
Except as specifically set forth in this Agreement, Employee shall be entitled to no other wages, salary, vacation pay, bonuses, incentive awards, commissions, benefits, stock, restricted stock units, stock options, or any other compensation of any kind, except as required by law. Employee acknowledges that the severance pay and benefits subsidy described in this Agreement are in excess of any earned wages and any other amounts due and owing to Employee, and are good and valuable consideration for the general release of claims and the other covenants and terms in this Agreement.

8. **GENERAL RELEASE OF CLAIMS.**
Employee hereby releases and forever discharges CVS Caremark Corporation and each of its divisions, affiliates, subsidiaries and operating companies, and the respective officers, directors, employees, agents and affiliates of each of them (collectively, the "Released Parties") from any and all causes of action, lawsuits, proceedings, complaints, charges, debts, contracts, judgments, damages, claims, and attorneys fees against the Released Parties, whether known or unknown, which Employee ever had, now has or which Employee or Employee's heirs, executors, administrators, successors or assigns may have prior to the date this Agreement is signed by Employee, due to any matter whatsoever relating to Employee's employment, compensation, benefits, and/or termination of Employee's employment with CVS Caremark (collectively, the "Released Claims"). The Released Claims include, but are not limited to, any claim that any of the Released Parties violated the National Labor Relations Act, Title VII of the Civil Rights Act of 1964, Sections 1981 through 1988 of Title 42 of the United States Code, the Employee Retirement Income Security Act, the Immigration Reform and Control Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family and Medical Leave Act, and/or the Occupational Safety and Health Act; any claim that any of the Released Parties violated any other federal, state or local statute, law, regulation or ordinance; any claim of unlawful discrimination of any kind; any public policy, contract, tort, or common law claim; and any claim for costs, fees, or other expenses including attorney's fees incurred in these matters. For the avoidance of doubt, this release includes any claims by Employee under the following laws: the West Virginia Human Rights Act, the New Jersey Law Against Discrimination, or the New Jersey Conscientious Employee Protection Act. Notwithstanding the foregoing, this release does not include any rights that Employee cannot lawfully waive, and will not release any rights Employee has to (a) defense and indemnification from CVS Caremark or its insurers for actions taken by Employee in the course and scope of Employee's employment with CVS Caremark; (b) claims, actions, or rights arising under or to enforce the terms of this Agreement; and/or (c) vested benefits under any retirement or pension plan and/or deferred compensation plan.

9. **NO PENDING ACTIONS; COVENANT NOT TO SUE.**
Employee represents that as of the date Employee signs this Agreement, Employee has not filed or initiated, or caused to be filed or initiated, any complaint, claim, action or lawsuit of any kind against any of the Related Parties in any federal, state, or local court or agency. Employee agrees not to initiate or file, or cause to be initiated or filed, any action, lawsuit, complaint or proceeding asserting any of the Released Claims against any of the Released Parties. Employee further agrees not to be a member of any class or collective action in any court or in any arbitration proceeding seeking relief against the Released Parties based on claims released by this Agreement, and that even if a court or arbitrator rules that Employee may not waive a claim released by this Agreement, Employee will not accept any money damages or other relief. Employee agrees to promptly reimburse the Company for any legal fees that the Company incurs as a result of any breach of this paragraph by Employee. Nothing in this Agreement is intended to or shall interfere with Employee's right to challenge the Company's compliance with the waiver requirements of the Age Discrimination Act, as amended by the Older Workers Benefit Protection Act. Moreover, nothing in this paragraph is intended to or shall interfere with Employee's right to participate in a proceeding with any appropriate federal, state or local government agency enforcing discrimination laws, nor shall this Agreement prohibit Employee from cooperating with any such agency in its investigation. Employee shall not, however, be entitled to receive any relief, recovery or monies in connection with any Released Claim brought against any of the Released Parties, regardless of who filed or initiated any such complaint, charge or proceeding.

10. **NO FMLA OR FLSA CLAIMS.**
Employee acknowledges that the Company has provided Employee with any leave to which Employee may be or may have been entitled under the Family and Medical Leave Act. Employee represents that Employee is not aware of any facts that would support a claim by Employee against any of the Released Parties for any violation of the Family and Medical Leave Act. Employee further acknowledges that Employee has been properly paid for all time worked and is unaware of any facts that would support a claim by Employee against any of the Released Parties for any claim of unpaid overtime or any other violation of the Fair Labor Standards Act.

11. **UNDERSTANDING OF AGREEMENT; ADVICE OF COUNSEL.**
Employee acknowledges and confirms that Employee has entered into this Agreement of Employee's own free will, without duress or coercion. Employee acknowledges that Employee has read and fully understands the meaning and intent of this Agreement and is competent to execute it. The Company hereby advises Employee to seek the advice of legal counsel concerning this Agreement before signing this Agreement, and Employee represents that Employee has had the opportunity to do so prior to signing this Agreement.

12. **TIME TO CONSIDER AND REVOKE AGREEMENT.**
Employee shall have twenty-one (21) days from the date of receipt (the "Consideration Period") to consider whether to enter into this Agreement. Any modifications to this Agreement, whether material or immaterial, will not restart the Consideration Period. If Employee chooses to sign and thereby accept this Agreement, Employee may revoke the acceptance within seven (7) calendar days of the date on which Employee signed the Agreement (the "Revocation Period"). To revoke the acceptance of the Agreement, Employee must send written notice stating that "I revoke my acceptance of the Separation Agreement," or words to that effect, to Mr. David L. Casey, Vice President Human Resources, or his successor, at the address listed below, before the end of the Revocation Period. This Agreement shall take effect on the day following the expiration of the Revocation Period (the "Effective Date"). Employee agrees that, promptly after signing this Agreement, Employee shall send the entire original signed agreement to Mr. David L. Casey, VP Human Resources, One CVS Drive, Woonsocket, RI 02895.

13. **OLDER WORKERS BENEFIT PROTECTION ACT INFORMATION.**

    (a) In the Company's desire to be in compliance with the Older Workers Benefit Protection Act ("OWBPA"), the Company advises Employee as follows. Employee has the opportunity to evaluate the terms of this Agreement for not less than 21 days prior to Employee's execution of this Agreement. Should Employee decide not to use the full 21 days, then Employee knowingly and voluntarily waives any claim that Employee was not given that period of time or did not use the entire 21 days to consult an attorney or consider this Agreement. Employee is hereby advised to consult with an attorney prior to executing this Agreement. This Agreement constitutes written notice that the Employee has been advised to consult with an attorney prior to executing this Agreement and that the Employee has carefully considered other alternatives to executing this Agreement.

    (b) By signing this Agreement, Employee represents and certifies that:

    i) Employee is relying solely upon the contents of this Agreement and is not relying on any other representations whatsoever of the Released Parties as an inducement to enter into this Agreement.

    ii) Employee's execution of this Agreement is a representation that Employee (A) has read this Release, (B) has been provided a full and ample opportunity to study it, including a period of at least 21 days within which to consider it, (C) has been advised in writing to consult with an attorney prior to signing it, and (D) is signing it voluntarily with full knowledge that it is intended, to the maximum extent permitted by law, as a complete release and waiver of any and all claims.

    iii) Without limiting the scope of this Agreement in any way, this Agreement constitutes a knowing and voluntary waiver of any and all rights or claims that exist or that Employee has or may claim to have under the Federal Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers Benefit Protection Act of 1990 ("OWBPA"), which is set forth at 29 U.S.C. § 621, et seq. This Agreement does not govern any rights or claims that may arise under the ADEA after the date this Agreement is signed by Employee.

14. **EMPLOYEE COVENANTS.**
    Employee acknowledges, represents and agrees as follows:

    (a) **NON-DISCLOSURE OF CONFIDENTIAL INFORMATION.**
    During the course of Employee's employment with CVS Caremark or any of its subsidiaries or affiliates, Employee has learned and had access to valuable non-public information concerning CVS Caremark Corporation and its predecessors, related entities, operating companies, subsidiaries, and affiliates (such entities hereafter referred to as the "Corporation") (such information, "Confidential Information"). For purposes of this Agreement, Confidential Information includes, but is not limited to, the Corporation's business plans, real estate plans and strategies, contracts, financial information, sales and marketing information, pharmacy policies and practices, information concerning the Corporation's personnel, including the skills, abilities and duties of the Corporation's employees, wage and benefit structures, succession plans, information concerning affirmative action plans or planning, information concerning vendors and suppliers, information pertaining to lawsuits and charges, IS programs, applications, strategic plans and information, trade secrets, and other information which could affect the Corporation's business. Employee has not, as of the date Employee signs this Agreement, disclosed to any third party or used, except as required in the course of performing work for CVS Caremark, any Confidential Information. Employee shall not disclose to any third party or use for himself/herself or anyone else any Confidential Information without the prior written authorization of CVS Caremark's Chief Human Resources Officer ("CHRO").

    (b) **NON-SOLICITATION AND NON-HIRE OF EMPLOYEES.**
    Employee will not, directly or indirectly, for 12 months following the Separation Date: (i) solicit, cause, induce, or encourage, or attempt to solicit, cause, induce, or encourage, any then-current employee of the Corporation to leave his or her employment; (ii) hire or otherwise engage the services of any then current employee of the Corporation or any individual who was employed by the Corporation in the six (6) months preceding the termination of Employee's employment; or (iii) assist, cause, induce or encourage, or attempt to assist, cause, induce or encourage, any third party to take any of the actions described in subsections (i) or (ii) above.

    (c) **RETURN OF PROPERTY.**
    On or before the Separation Date Employee shall return to CVS Caremark all property of the Corporation in Employee's control or possession, including but not limited to the originals and copies of any information provided to or acquired by Employee in connection with the performance of work for the Corporation, including but not limited to all files, correspondence, communications, memoranda, e-mails, slides, records, and all other documents, no matter how produced or reproduced, all computer equipment, programs and files, and all office keys and access cards, it being hereby acknowledged that all of said items are the sole and exclusive property of the Corporation.

(d) **NON-DISPARAGEMENT.**
Employee will not make any statements that disparage the business or reputation of the Corporation, and/or any officer, director or employee of the Corporation. Notwithstanding the foregoing, nothing in this Agreement shall prohibit Employee from (i) making truthful statements or disclosures that are required by applicable law, regulation or legal process; or (ii) requesting or receiving confidential legal advice.

(e) **COOPERATION.**

   i) In the event Employee receives a subpoena, deposition notice, interview request, or any other inquiry, process or order relating to any civil, criminal or administrative investigation, suit, proceeding or other legal matter relating to the Corporation from any investigator, attorney or any other third party, Employee agrees to promptly notify the Company's General Counsel by telephone and in writing. Without limiting the generality of the preceding sentence, in the event Employee receives a subpoena, deposition notice, interview request, or any other inquiry, process or order which requires or may reasonably be construed to require Employee to produce Confidential Information, Employee shall promptly: (a) notify the Company's General Counsel of the item, document, or information sought by such subpoena, deposition notice, interview request, or other inquiry, process or order; (b) furnish the Company's General Counsel with a copy of said subpoena, deposition notice, interview request, or other inquiry, process or order; and (c) provide reasonable cooperation with respect to any procedure that the Company may initiate to protect Confidential Information or other interests. If the Company objects to the subpoena, deposition notice, interview request, inquiry, process, or order, Employee shall cooperate to ensure that there shall be no disclosure until the court or other applicable entity has ruled upon the objection, and then only in accordance with the ruling so made. Nothing in this Agreement shall be construed to prohibit Employee from testifying truthfully in any legal proceeding.

   ii) Employee shall cooperate fully with the Corporation and its legal counsel in connection with any action, proceeding, or dispute arising out of matters with which Employee was directly or indirectly involved while serving as an employee of the Corporation. This cooperation shall include, but shall not be limited to, meeting with, and providing information to, the Corporation and its legal counsel, maintaining the confidentiality of any past or future privileged communications with the Corporation's legal counsel (outside and in-house), and making himself/herself available to testify truthfully by affidavit, in depositions, or in any other forum on behalf of the Corporation. CVS Caremark agrees to reimburse Employee for any reasonable and necessary out-of-pocket costs associated with such cooperation.

15. **BREACH OF EMPLOYEE COVENANTS AND INJUNCTIVE RELIEF.**
Without limiting the remedies available to CVS Caremark, Employee acknowledges that a breach by Employee of any of the covenants set forth above in the section entitled Employee Covenants will result in irreparable injury to some or all of the Corporation for which there is no adequate remedy at law, that monetary relief will be inadequate, and that, in the event of such a material breach or threat thereof, CVS Caremark shall be entitled to obtain, in addition to any other relief that may be available, a temporary restraining order and/or a preliminary or permanent injunction, restraining Employee from engaging in activities prohibited by any of the sections of this Agreement identified in this paragraph, as well as such other relief as may be required specifically to enforce any of the sections of this Agreement identified in this paragraph, without the payment of any bond. In the event that a court issues a temporary restraining order, preliminary injunction, permanent injunction, or issues any other similar order enjoining Employee from breaching this Agreement, or awards CVS any damages due to Employee's breach of this Agreement, Employee agrees promptly to reimburse the Company for all reasonable attorneys fees incurred by CVS in connection with obtaining such equitable relief or damages.

16. **NONADMISSION OF WRONGDOING.**
Employee and CVS Caremark agree that neither this Agreement nor the furnishing of consideration hereunder shall be deemed or construed at any time for any purpose as an admission by either party of any liability, wrongdoing or unlawful conduct, and Employee and CVS Caremark expressly deny any such liability, wrongdoing or unlawful conduct.

17. **GOVERNING LAW.**
This Agreement shall be governed by and conformed in accordance with the laws of the State of Rhode Island without regard to its conflict of laws provisions. Any actions brought to enforce the terms of this Agreement shall be brought in a court of competent jurisdiction located in the State of Rhode Island.

18. **JURY TRIAL WAIVER.**
Employee and CVS Caremark irrevocably and unconditionally waive the right to a trial by jury in any action or proceeding seeking to enforce, or alleging the breach of, any provision of this Agreement.

19. **COUNTERPARTS.**
This Agreement may be executed in counterparts and each counterpart will be deemed an original.

20. **SECTION HEADINGS.**
Section headings contained in this Agreement are for convenience of reference only and shall not affect the meaning of any provision herein.

21. **SEVERABILITY.**
If any of the provisions of the section entitled Employee Covenants are deemed unenforceable by a court of competent jurisdiction because they are overly broad, then the court shall have the ability to modify the offending provision in order to make it enforceable. Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction and if such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either of the parties.

22. **RESPONSIBILITY FOR TAXES.**
All payments set forth in this Agreement are subject to applicable withholdings and deductions. Employee acknowledges and agrees that Employee is solely responsible for all taxes on the payments and benefits described in this Agreement. The parties intend for the terms of this Agreement to be paid in such a manner to be compliant with Section 409A of the Internal Revenue Code of 1986, as amended ("Code Section 409A"), or, as applicable, to be exempt from Code Section 409A (including as necessary for the salary continuation payments to satisfy the involuntary separation pay exception set forth in Treasury Regulation Section 1.409A-1(b)(9)). Notwithstanding the foregoing, CVS Caremark makes no representations or guarantees with respect to the taxation of any of the payments or benefits set forth herein, including taxation pursuant to Code Section 409A.

23. **DEBTS TO THE COMPANY.**
Employee acknowledges that, in the event Employee is indebted to the Company or an affiliate thereof, the severance payments provided for in the Agreement may be reduced, offset, withheld or forfeited up to the amount of the debt.

24. **ENTIRE AGREEMENT.**
This Agreement; the ICP; and any compensation, equity or benefit plan or agreement referred to herein set forth the entire agreement between the parties hereto and fully supersede any and all prior and/or supplemental understandings, whether written or oral, between the parties concerning the subject matter of this Agreement. Employee has not relied on any representations, promises or agreements of any kind made to Employee in connection with Employee's decision to accept the terms of this Agreement, except for the representations, promises and agreements herein. Any modification to this Agreement must be in writing and signed by Employee and CVS Caremark's CHRO or her authorized representative.

**IN WITNESS WHEREOF**, the parties knowingly and voluntarily executed this Separation Agreement as of the dates set forth below.

Philip Bradford
0104600

**CVS PHARMACY, INC.**

By:_____
David L. Casey
Vice President, Human Resources

Date:_____

Date:_____