IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHILIP BRADFORD
on behalf of himself and others similarly situated,

Plaintiff,

v.

CVS PHARMACY, INC.,

Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-1159-TWT

**OPINION AND ORDER**

This is an action under the Fair Labor Standards Act. It is before the Court on the Defendant CVS Pharmacy, Inc.'s Motion for Decertification [Doc. 296]. For the reasons set forth below, the Defendant CVS Pharmacy, Inc.'s Motion for Decertification [Doc. 296] is GRANTED.

## I. Background

The Plaintiff Philip Bradford and the collective action class members are current and former "Regional Loss Prevention Managers" ("RLPMs") for the Defendant CVS Pharmacy, Inc. RLPMs are part of the Defendant's Loss Prevention Department, and each RLPM is assigned to around fifty to eighty CVS retail stores. Bradford brought suit against the Defendant claiming that the Defendant improperly

classified him and all other RLPMs as exempt under the FLSA, and thus unlawfully failed to provide them with overtime pay. On July 3, 2012, Bradford moved for conditional certification of a collective action class consisting of current and former RLPMs of the Defendant.[1] On February 4, 2013, the Court granted Bradford's motion.[2] Since then, thirty-eight parties have opted in to this lawsuit. Now, with the benefit of discovery, the Defendant moves for decertification of the collective action class.

## II. Discussion

The "FLSA authorizes collective actions against employers accused of violating the FLSA."[3] 29 U.S.C. § 216(b) states that "[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." The "FLSA itself does not define how similar the employees must be before the case may proceed as a collective action" and the Eleventh Circuit has not "adopted a precise definition of the term."[4]

---

1 [Doc. 32].

2 [Doc. 61].

3 Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008).

4 Id. at 1259.

At minimum, the employees must be similarly situated "with respect to their job requirements and with regard to their pay provisions."[5]

The Eleventh Circuit has "sanctioned a two-stage procedure for district courts to effectively manage FLSA collective actions in the pretrial phase."[6] The first step is "referred to as conditional certification since the decision may be reexamined once the case is ready for trial."[7] A plaintiff simply has to show a "'reasonable basis' for his claim that there are other similarly situated employees."[8] The "standard for determining similarity, at this initial stage . . . [is] not particularly stringent."[9] The "second stage is trigger by an employer's motion for decertification."[10] At this stage, "the district court has a much thicker record" and the "plaintiff bears a heavier burden."[11] The "similarities necessary to maintain a collective action . . . must extend beyond the mere facts of job duties and pay provisions and encompass the defenses

---

5 Id. (internal quotation marks omitted).

6 Id. at 1260.

7 Id. at 1261.

8 Id. at 1260.

9 Id. at 1260-61 (internal quotation marks omitted).

10 Id. at 1261.

11 Id.

to some extent."[12] Thus, the Court considers "a number of factors . . . such as: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."[13] However, these "factors . . . are not mutually exclusive – there is considerable overlap . . . [e]ach factor directly influences the others."[14] At bottom, the Court must decide whether the Plaintiffs' job duties and pay provisions are sufficiently similar such that it is likely that the Court may determine liability on a class-wide basis. The "ultimate decision" to decertify a conditionally certified collective action class "rests largely within the district court's discretion."[15]

The Defendant argues that the discovery has revealed multiple distinctions in the job duties performed by the various opt-in Plaintiffs. According to the Defendant, these distinctions will force the Court to conduct an individualized inquiry for each opt-in Plaintiff to determine whether a particular FLSA defense – e.g., the administrative exemption – applies.

---

[12] Id. at 1262.

[13] Id. at 1261 (internal quotation marks omitted).

[14] Knott v. Dollar Tree Stores, Inc., 897 F. Supp. 2d 1230, 1234 (N.D. Ala. 2012).

[15] Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007).

In support, the Defendant introduces testimony from various opt-in Plaintiffs. This testimony reveals a number of differences in the duties they each performed. For example, not all of the Plaintiffs managed "market investigators," which are employees that work undercover in CVS stores to combat shoplifting.[16] During the relevant time period, there were no market investigators in Bradford's or Kirt Lovett's "span of control" (the stores for which an RLPM is responsible).[17] By contrast, at least nine Plaintiffs *did* manage market investigators.[18] And even among those nine Plaintiffs, there are varying degrees of responsibility. For example, Timothy Fulton oversaw the entire market investigator program in Detroit, Michigan, which included market investigators outside of his span of control.[19] He was responsible for hiring, firing, training, evaluating, and managing the work of the market investigators.[20]

---

16 Spargo Dep., at 68 ("The market investigator's role is to deter external theft and basically almost in an undercover type role to monitor the store floor, look for suspicious activity, identify shoplifting, [and] shoplifting patterns.").

17 Bradford Dep., at 45, 320; Lovett Dep., at 242.

18 Def.'s Mot. for Decertification, at 20.

19 Fulton Dep., at 56-59.

20 Fulton Dep., at 59-61, 66-67, 69-70.

However, Dennis Douress testified that he only managed three or four market investigators, and they were all within his span of control.[21]

Additionally, different Plaintiffs took on various, unique duties. For example, due to a surge in pharmacy robberies in Maine, Kenneth Huber helped create and implement a "pharmacy anti-robbery strategy that entailed putting GPS tracking devices in drug bottles, training pharmacists regarding the use of GPS devices, educating store and pharmacy personnel regarding basic safety during robberies, coordinating with vendors and police to track the drugs, selecting which stores would implement this strategy, and implementing other aspects of deterrence."[22] Huber was also responsible for helping to create and implement the "Emerging Leader Program" for candidates seeking to become RLPMs.[23] However, Huber never took on a leadership role among those that already were RLPMs.[24] But Douress did.[25] He was involved with overseeing and training current RLPMs.[26]

---

21 Douress Dep., at 204-06.

22 Def.'s Mot. for Decertification, at 23-24 (citing to Huber Dep., at 191-94, 262-64).

23 Huber Dep., at 205-09.

24 Huber Dep., at 50.

25 Douress Dep., at 275.

26 Douress Dep., at 101-02, 266-67, 275.

The Defendant further argues that even among the duties that the Plaintiffs did share, they each exercised different levels of discretion and independent judgment. For example, the RLPMs often trained others within the Defendant's business on loss prevention. Bradford and Huber testified that they exercised very little discretion in training other employees. Bradford typically gave training presentations using PowerPoints he obtained "from other loss prevention reps" and "corporate."[27] Similarly, Huber testified that he only provided training when instructed to do so.[28] By contrast, Lester Klein often created his own training materials, and held weekly training calls for loss prevention.[29] According to the Defendant, similar distinctions may also be found in the level of discretion exercised by the various Plaintiffs in conducting investigations and audits.

Based on these distinctions, and others revealed by the evidence in the record, the Court concludes that the opt-in Plaintiffs are not "similarly situated," as that phrase is used in the FLSA. The differences in the duties performed by the various Plaintiffs, as well as the varying degrees of discretion and independent judgment they

---

27 Bradford Dep., at 190.

28 Huber Dep., at 380.

29 Klein Dep., at 87-89, 131-32.

each exercised, will make individualized inquiries inevitable when determining whether a particular FLSA defense applies.

A brief discussion of the Defendant's executive and administrative exception defenses may help illustrate this point. Section 13(a)(1) of the FLSA "provides an exemption from the Act's . . . overtime requirements for any employee employed in a bona fide executive [or] administrative . . . capacity." 29 C.F.R. § 541.0(a). The "term 'employee employed in a bona fide executive capacity' . . . mean[s] any employee: (1) Compensated on a salary basis at a rate of not less than $455 per week . . . ; (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof; (3) Who customarily and regularly directs the work of two or more other employees; and (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."[30] And "'management' includes, but is not limited to, activities such as interviewing, selecting, and training of employees; . . . directing the work of employees; . . . planning the work; . . . [and] apportioning the work among the employees."[31] Due to the differences among the

---

[30] 29 C.F.R. § 541.100(a).

[31] 29 C.F.R. § 541.102.

various opt-in Plaintiffs, the Court obviously cannot assess this defense on a class-wide basis. As explained earlier, some Plaintiffs oversaw many market investigators, and even had the authority to hire or fire them. Others, however, had no contact with market investigators at all. Thus, the Court would have to conduct an individualized inquiry for each party against whom this defense is asserted.

Further, the administrative exception applies only to employees "[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and . . . [w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."[32] The "exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."[33] And the regulations make clear that "[t]he phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the *particular employment situation* in which the question arises."[34] Again, the differences among the various opt-in Plaintiffs will require the Court to

---

32 29 C.F.R. § 541.200(a).

33 29 C.F.R. § 541.202(a).

34 29 C.F.R. § 541.202(b) (emphasis added).

conduct individualized assessments when determining whether the administrative exception applies. As noted earlier, certain opt-in Plaintiffs bore additional, significant responsibilities which arguably required the exercise of discretion and independent judgment (e.g., formulating an anti-robbery strategy or overseeing other RLPMs). Even among the duties the Plaintiffs did share, some may have exercised greater discretion than others (e.g., when training other employees). To be clear, the Court is not concluding that the FLSA defenses will certainly turn on these factual distinctions. The point is that the distinctions are *relevant* to the analysis, and so the Court would have to conduct a separate inquiry for each Plaintiff to determine whether the defense applies.[35] Accordingly, the collective action mechanism is ill-suited for this case.[36]

Other courts have reached the same conclusion when confronted with similar facts. For example, in Green v. Harbor Freight Tools USA, Inc.,[37] the plaintiffs – "store managers" for the defendant, a company that operates retail stores selling "tools

---

[35] It is worth noting that, in their Response brief, the Plaintiffs do not address the many job duty distinctions highlighted by the Defendant in its Decertification Motion. Although the Plaintiffs claim that they shared certain primary duties, they do not dispute the Defendant's claim that there were still various, unique duties bestowed on some of the Plaintiffs, but not others.

[36] See Green v. Harbor Freight Tools USA, Inc., 888 F. Supp. 2d 1088, 1103 (D. Kan. 2012) ("[I]ndividualized defenses inhibit the efficiency of proceedings on a collective basis.").

[37] 888 F. Supp. 2d 1088 (D. Kan. 2012).

and related products and accessories"[38] – brought suit under the FLSA for unpaid overtime. The plaintiffs were all "governed by the same job description."[39] The defendant moved to decertify the collective action class, arguing that various differences among the plaintiffs' respective job duties would inhibit the court from assessing any particular FLSA defense on a class-wide basis. The court granted the defendant's motion:

> [The Defendant] has indicated that it intends to present individualized evidence as to each opt-in Plaintiff's claim and that the record reveals that it is not possible to establish the Plaintiffs' daily tasks through common testimony, due to what it deems the individualized and fact intensive nature of the exemption analysis under the circumstances of this case. . . . Plaintiffs respond that [the Defendant] can only put forth one common defense that applies across the board – the executive exemption. According to Plaintiffs, this defense can be addressed collectively and refuted by all Plaintiffs through generalized evidence.
>
> The Court finds that the potential defenses of [the Defendant] would make collective treatment of this action unmanageable. . . . The deposition testimony shows that it is not possible to develop common testimony from the [the plaintiffs] regarding their daily responsibilities and duties, or the weight given their recommendations regarding hiring, firing and discipline.[40]

---

38 Id. at 1093.

39 Id.

40 Id. at 1103-04.

The case of Knott v. Dollar Tree Stores, Inc.[41] is another example. There, the plaintiffs – individuals who "worked at different Dollar Tree Stores throughout the country as store managers" – brought suit under the FLSA "claiming that they were wrongfully classified as exempt and thus improperly denied overtime compensation."[42] The court noted that there were differences in the number of employees each plaintiff managed,[43] the amount of time each plaintiff spent training employees,[44] and the amount of authority each plaintiff had to hire and fire employees.[45] The court ultimately concluded that these differences would force the court to conduct an independent inquiry for each plaintiff with regards to the defendant's executive exemption defense:

> While Dollar Tree applied its executive exemption across-the-board, the defense is individuated in this case as Plaintiffs' job duties and employment experiences vary dramatically. Although some may have performed uniform tasks mandated by a corporate manual, others routinely exercised their independent judgment and the amount of time they spent performing managerial duties is a matter of individual inquiry. Furthermore, Dollar Tree may be able to apply the exemption to different Plaintiffs based on different circumstances. Even if every Plaintiff spent

---

41 897 F. Supp. 2d 1230 (N.D. Ala. 2012).

42 Id. at 1233.

43 Id. at 1237.

44 Id.

45 Id. at 1238.

> similar amounts of time performing exempt job duties as a whole, because they performed a wide array of differing exempt job duties with varying degrees of importance, one group of them cannot reasonably be said to be representative of them all. Thus, a one-size-fits-all determination is impossible.[46]

In Green and Knott, the plaintiffs shared the same job title and many of the same responsibilities. Nonetheless, the differences in their respective job duties were sufficient to warrant decertification of the collective action class. The same considerations lead the Court to decertify the collective action class here.

In response, the Plaintiffs argue that only their *primary* duties are relevant to the executive and administrative exemptions, and that they shared the same primary duties: performing audits and investigations. The Defendant, however, disputes that these are the only two primary duties for each Plaintiff. And as the Defendant correctly points out, the Court would have to conduct yet another individualized inquiry for each Plaintiff to determine who is correct.[47] The "term 'primary duty' means the principal, main, major or most important duty that the employee performs."[48] Factors "to consider when determining the primary duty of an employee

---

46 Id. at 1240-41.

47 See 29 C.F.R. § 541.700(a) ("Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.").

48 Id.

include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; [and] the employee's relative freedom from direct supervision."[49] Here, the Defendant submits evidence to support its claim that auditing and investigating were not the only two "primary duties" for each Plaintiff. For example, although Bradford testified that he only had two primary responsibilities, the opt-in Plaintiff Spargo testified that he had three: auditing, investigating, and *training*.[50] To determine what Spargo's primary duties were, the Court would have to consider this testimony, along with other factors that may be unique to Spargo. And given the various differences among their job duties, it is likely that the Court would have to conduct a similar individualized inquiry for each Plaintiff to determine what his or her primary duties were. Thus, the Plaintiffs' argument does not counsel in favor of preserving the collective action class.[51]

---

[49] Id.

[50] Spargo Dep., at 40-41.

[51] The Plaintiffs claim that they spent roughly 80% of their time performing audits and investigations. But as the Defendant correctly points out, the Plaintiffs do not submit sufficient evidence to establish that *each* opt-in Plaintiff truly spent "80%" of his or her time on these two duties. Regardless, the regulations make clear that "[t]ime alone . . . is not the sole test, and" employees need not "spend more than 50 percent of their time performing exempt work" for the exemption to apply. 29 C.F.R. § 541.700(b). The regulations further state that "[e]mployees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the

The Plaintiffs then argue that the Defendant is only asserting one defense against all of the Plaintiffs. Obviously this is incorrect. The Defendant asserts at least two different defenses – the executive and administrative exceptions – which contain different elements. But even if the Defendant had asserted only one defense, it does not mean that the Court could evaluate the applicability of that defense on a class-wide basis. Given the material distinctions between the respective job duties of the Plaintiffs, the Court would still have to conduct a separate analysis for each Plaintiff to determine whether that defense applies to him or her. Accordingly, the Plaintiffs have failed to establish that they, the members of the collective action class, are "similarly situated." And because the "lead plaintiff[] bear[s] the burden of showing that the opt-in plaintiffs are similarly situated to the lead plaintiff[],"[52] the collective action class should be decertified.

---

primary duty requirement if the other factors support such a conclusion." Id.

[52] O'Brien v. Ed Donnelly Enterprises, Inc., 575 F.3d 567, 584 (6th Cir. 2009).

## III. Conclusion

For these reasons, the Court GRANTS the Defendant CVS Pharmacy, Inc.'s Motion for Decertification [Doc. 296].

SO ORDERED, this 6 day of August, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge