IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHILIP BRADFORD
on behalf of himself and others
similarly situated,

    Plaintiff,

      v.

CVS PHARMACY, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:12-CV-1159-TWT

## OPINION AND ORDER

This is an action under the Fair Labor Standards Act.  It is before the Court on the Defendant CVS Pharmacy, Inc.'s Motion for Summary Judgment [Doc. 329].  For the reasons set forth below, the Defendant CVS Pharmacy, Inc.'s Motion for Summary Judgment [Doc. 329] is GRANTED.

## I. Background

The Plaintiff, Philip Bradford, is a former employee of the Defendant, CVS Pharmacy, Inc.[1] From approximately 2002 until 2012, Bradford worked as a Regional Loss Prevention Manager ("RLPM") for CVS.[2] Bradford was an RLPM for a large

---

[1]    Def.'s Statement of Facts in Supp. of Mot. for Summ. J. ¶ 1.

[2]    <u>Id.</u>

geographic territory of Georgia for the last three years of his employment.[3] As an RLPM, Bradford was responsible for investigating causes of shrink[4] in retail stores.[5] As part of his investigations, Bradford would interview suspects and witnesses and discuss the result of his investigations with his supervisors.[6] CVS maintains that Bradford had autonomy over his investigations, noting that Bradford chose whether to trust a source and what course of action to take throughout an investigation.[7] However, Bradford argues that he exercised very little discretion during his investigations and had to follow a specific protocol supplied by CVS.[8] Bradford also performed loss prevention audits.[9] During the audits, Bradford would answer questions on a checklist to help determine whether a particular store was in compliance with CVS's loss

---

[3]     Id. ¶ 14.

[4]     Shrink is defined as the unaccounted for loss of money, merchandise, and/or medication from a retail store. See Def.'s Mot. for Summ. J., at 6 n.3.

[5]     Def.'s Statement of Facts in Supp. of Mot. for Summ. J. ¶ 12.

[6]     Id. ¶ 20.

[7]     Id. ¶¶ 22-31.

[8]     Pl.'s Statement of Facts in Opp'n to Def.'s Mot. for Summ. J. ¶¶ 26-28, 43.

[9]     Def.'s Statement of Facts in Supp. of Mot. for Summ. J. ¶ 38.

prevention techniques.[10] If shrink was high in a particular district, Bradford would sometimes meet with the District Manager and/or Region Manager to go over the audit results and discuss the stores that were not in compliance with CVS's shrink goals.[11] He would also discuss loss prevention techniques with Region, District, and Store managers.[12] Finally, Bradford contends he spent a large portion of his time driving from store to store.[13]

In January 2012, Bradford was terminated due to poor and inconsistent performance.[14] Four months later, Bradford filed suit against CVS, alleging that CVS failed to pay him overtime compensation as required by the Fair Labor Standards Act ("FLSA").[15] CVS declined to pay overtime compensation to Bradford and other RLPMs because CVS classified RLPMs as exempt from the FLSA's overtime requirements.[16] Bradford alleges that he was misclassified.  Bradford also seeks to

---

[10]     Id. ¶ 39; Pl.'s Statement of Facts in Opp'n to Def.'s Mot. for Summ. J., ¶¶ 13-14.

[11]     Def.'s Statement of Facts in Supp. of Mot. for Summ. J. ¶ 51.

[12]     Id. ¶ 49.

[13]     Pl.'s Resp. Br., at 3.

[14]     Def.'s Statement of Facts in Supp. of Mot. for Summ. J. ¶¶ 76-77.

[15]     Compl. ¶¶ 29-33.

[16]     Id.

recover for breach of contract and equitable relief, both of which center around CVS's severance policy. Bradford contends that CVS maintained a severance policy that was part of his employment contract.[17] He alleges that CVS breached his employment contract by offering him a separation agreement that conditioned a severance payment on the waiver of any FLSA claims.[18] CVS argues that Bradford has failed present evidence of CVS's severance plan. CVS further contends that, "[t]o the extent CVS had a severance plan during the relevant period, employees terminated for poor performance were not eligible for or entitled to severance plan benefits."[19] Rather, for employees terminated for poor performance, CVS states that it decided on a case-by-case basis whether to offer them severance benefits.[20] It is undisputed that Bradford was offered severance benefits in his separation agreement, but elected not to sign the agreement.[21]

---

[17]   Id. ¶ 106.

[18]   Id. ¶ 108.

[19]   Def.'s Statement of Facts in Supp. of Mot. for Summ. J. ¶ 79.

[20]   Id. ¶ 80.

[21]   Id. ¶ 85.

For his equitable relief claims, Bradford contends that CVS violated 29 U.S.C. § 215(a)(3), the FLSA's non-retaliation provision.[22] Specifically, he alleges that CVS retaliated against him because he sought to recover unpaid overtime compensation.[23] He seeks reformation or modification and specific performance of his employment agreement and/or his separation agreement. Furthermore, under Georgia law, Bradford asks the Court to remove any provisions of his separation agreement that violate state law and to issue an equitable decree reforming, modifying, and enforcing his employment agreement.[24] The Defendant moves for summary judgment on all of Bradford's claims.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[25] The court should view the evidence and any inferences that may be drawn in the light most favorable to the

---

[22]     Compl. ¶ 115.

[23]     Id. ¶ 117.

[24]     Id. ¶¶ 129-31.

[25]     FED. R. CIV. P. 56(a).

nonmovant.[26] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[27] The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists.[28] "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[29]

## III. Discussion

### A. Compliance With Local Rules

CVS asserts that Bradford's response to CVS's statement of material facts fails to comply with the requirements of the Local Rules.[30] The Court agrees. A large number of Bradford's responses do not comply with Local Rule 56.1B(2)(a)(1), which requires the nonmovant to state a valid objection.[31] Many of Bradford's objections are

---

[26]   Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[27]   Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[28]   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

[29]   Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[30]   See Def.'s Reply Br., at 2-5.

[31]   See N.D. Ga. Local R. 56.1(B)(2)(a)(1) ("This Court will deem each of the movant's facts admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's

either not supported by his specific citations to the evidence or do not directly refute the stated fact.[32] As a result, those facts are deemed admitted.[33]

## B. FLSA Overtime Payment

The Plaintiff contends that he was denied overtime payment in violation of the FLSA. The FLSA requires employers to pay employees time-and-a-half for any hours worked in excess of forty hours per week.[34] However, the FLSA overtime requirement does not apply to employees who are "employed in a bona fide executive, administrative or professional capacity . . . ."[35] CVS contends that the Plaintiff, as an RPLM, falls under the administrative employee exemption. The administrative employee exemption exempts:

> any employee (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . ; (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;

---

fact; . . . .").

[32]    See Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 20, 23, 25-26, 28-30, 36-39, 41-43, 49-51, 59, 94 (failing to directly refute CVS's fact), 17, 22, 44, 92-93 (failing to cite evidence that supports Bradford's response), 3, 27, 72-73, 75-76, 86-87 (making invalid objections by claiming relevance).

[33]    N.D. Ga. Local R. 56.1(B)(2)(a)(1).

[34]    29 U.S.C. § 207(a)(1).

[35]    29 U.S.C. § 213(a)(1).

and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.[36]

"For Defendants to prevail, they must prove the applicability of the exemption by 'clear and affirmative evidence.'"[37] "Additionally, the Court must narrowly construe the exemption against the employer."[38] Here, it is undisputed that the Plaintiff was paid on a salary basis in excess of $455 per week.[39] The second and third requirements are in dispute.

The second requirement of the administrative employee exemption provides that the employee's primary duty must be non-manual "work directly related to the management or general business operations of the employer or the employer's customers."[40] An employee's primary duty is "the principal, main, major or most important duty that the employee performs."[41] Factors to consider when determining

---

[36]     29 C.F.R. § 541.200.

[37]     Ferrell v. Gwinnett Cnty. Bd. of Educ., 481 F. Supp. 2d 1338, 1343 (N.D. Ga. 2007) (quoting Birdwell v. City of Gadsden, 970 F.2d 802, 905 (11th Cir. 1992)).

[38]     Id. (quoting Atlanta Prof'l Firefighters Union, Local 14 v. City of Atlanta, 920 F.2d 800, 804 (11th Cir. 1991)).

[39]     See Pl.'s Resp. Br., at 19; Pl.'s Resp. to Def.'s Statement of Facts ¶¶ 9-11.

[40]     29 C.F.R. § 541.200.

[41]     29 C.F.R. § 541.700(a).

an employee's primary duty include: (1) the relative importance of the exempt duties; (2) the amount of time spent performing exempt work; (3) whether the employee is subject to direct supervision; and (4) the relationship between the employee's salary and the wages paid to other nonexempt employees.[42] And, as noted above, "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."[43]

CVS opines that Bradford's primary duty "was to identify and analyze internal and external causes of shrink in CVS's retail operations across the CVS stores within his span of control, and to create and implement plans to effectively reduce these threats in order to protect CVS's assets."[44] CVS points to Bradford's own testimony as evidence of his primary duty. Bradford testified that some of his tasks as an RLPM included conducting theft investigations, determining the underlying causes of shrink, and devising strategies with Region and District Managers to reduce shrink.[45] CVS argues that this is non-manual work and that it is directly related to its general business

---

[42]   Id.

[43]   29 C.F.R. § 541.201(a).

[44]   Def.'s Mot. for Summ. J., at 6.

[45]   Bradford Dep. at 118-21, 133, 135-36, 361-62.

operations, specifically the functional area of loss prevention. The Plaintiff counters that his primary duties at CVS were to drive to retail locations, perform baseline audits, and investigate thefts. The Plaintiff estimates – without evidential support – that between 35% and 60% of an RLPM's work week is spent driving.[46] For the baseline audits and investigations, he argues that he merely filled out standardized forms and followed company protocol. In addition, he notes that he installed surveillance cameras and used a ladder to move around the retail stores. Thus, the Plaintiff argues that his primary duties were manual in nature.

The Court finds that the Defendant's definition more accurately represents the Plaintiff's primary duty. It is evident from the Plaintiff's testimony that he did more than drive to retail locations and perform baseline audits and investigations. The Plaintiff testified that he attempted to determine the root causes of losses; helped develop solutions to shrink; met with district managers to go over audit results; represented CVS as an RLPM in various legal matters; and utilized a corporate training program to train field and store management on loss prevention. Indeed, when asked whether he served as a subject matter expert on loss prevention during a loss

---

[46]     See Pl.'s Resp. Br., at 3. The only evidence that the Plaintiff cites is Bradford's own testimony that he was assigned to a few retail locations that were more than four hours from his home. This testimony, however, does not support the amount of driving time that the Plaintiff claims in his response brief.

prevention training, Bradford responded "[w]ithin reason, yes."[47] This work is clearly non-manual. Moreover, all of the manual tasks that the Plaintiff points out are, in actuality, in furtherance of his non-manual loss prevention tasks.[48] As a result, putting emphasis on the character of the Plaintiff's position as a whole – as the FLSA requires – the Court finds that the Plaintiff's primary duty was to investigate and prevent shrink in his district, and that his primary duty involved non-manual work.[49]

Next, the Court must determine whether the Plaintiff's primary duty is "directly related to the management or general business operations" of CVS.[50] The relevant Department of Labor regulation provides a non-exclusive list of examples of such exempt work. The list includes the functional areas of quality control, auditing, budgeting, and safety and health – to name a few.[51] "Although asset protection and recovery is not included, the list is non-exclusive, and [the Court] think[s] that this type

---

[47]     Bradford Dep. at 201-02.

[48]     Ferrell v. Gwinnett Cnty. Bd. of Educ., 481 F. Supp. 2d 1338, 1345 (N.D. Ga. 2007) ("[T]he mere fact that Plaintiffs performed some manual work . . . does not preclude the application of the administrative exemption.").

[49]     See 29 C.F.R. § 541.700(a) ("Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.").

[50]     29 C.F.R. § 541.200.

[51]     29 C.F.R. § 541.201(b).

of work is in a 'functional area' similar to those listed."[52] It is also clear that Bradford did not participate in the sale of retail goods; he assisted in "servicing" CVS's retail business by investigating and preventing shrink. The Plaintiff does not present any arguments to the contrary. Thus, the Court finds that the Plaintiff's primary duty was directly related to CVS's general business operations, and, as a result, the Defendant has satisfied the second requirement of the administrative employee exemption.

The third prong of the administrative employee exemption provides that an employee's primary duty must "involve the exercise of discretion or independent judgment with respect to matters of significance."[53] Generally, "the exercise of discretion and independent judgment involves the comparison and evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."[54]  Whether an employee exercises the necessary discretion to qualify as an exempt employee is a fact intensive inquiry. For that reason, the FLSA provides a non-exclusive list of factors for the Court to consider:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of

---

[52]     Mullins v. Target Corp., No. 09C7573, 2011 WL 1399262, at *5 (N.D. Ill. Apr. 13, 2011).

[53]     29 C.F.R. § 541.202(b).

[54]     29 C.F.R. § 541.202(a).

the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.[55]

In addition, while the exercise of discretion implies that an employee has the ability to make decisions free from immediate supervision, employees may still exercise discretion even if their decisions are reviewed by their supervisors.[56] "The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."[57]

CVS contends that Bradford exercised sufficient discretion to qualify as an exempt administrative employee. Specifically, CVS asserts that Bradford exercised authority over his investigations, noting, for example, that Bradford decided whether

_____

[55]    29 C.F.R. § 541.202(b).

[56]    29 C.F.R. § 541.202(c).

[57]    Id.

to trust a tip source and how to best verify the tip.[58] CVS further asserts that while Bradford was provided with interview guidelines and sample questions, he decided what tactics to use during interviews or interrogations, such as misrepresenting the facts.[59] For the baseline audits, CVS notes that, according to Bradford, each RLPM performed the baseline audits differently and would reach different conclusions with respect to questions on the baseline audit form.[60] Beyond the investigations and baseline audits, CVS points out that Bradford discussed loss prevention techniques with District and Region Managers and would recommend certain techniques, depending on the needs of the district or region.[61] Bradford also taught loss prevention techniques and conceded that he served as the "expert on CVS loss prevention" at a loss prevention training.[62]

In response, the Plaintiff contends that he performed his primary duties in accordance with the strict directives of the baseline audit and interview protocol. The Plaintiff notes that he was not allowed to interview anyone without obtaining

---

[58]   Def.'s Mot. for Summ. J., at 17.

[59]   Id.

[60]   Id. at 19.

[61]   Id. at 16.

[62]   Id. at 15; Bradford Dep. at 201-02.

permission from the Area Loss Prevention Director ("ALPD") or the District Manager, that he had to follow a script during his interviews, and that he was supervised by a Pharmacy or District Manager during the interviews. He insists that the interviews were not interrogations, but were simply question and answer sessions. He also states that the baseline audits only consisted of filling out a checklist, which did "not contain any space for analysis or comment by the RLPM."[63] Thus, according to the Plaintiff, he did not yield any discretion over his primary duties.

Despite the Plaintiff's efforts to paint his job as non-discretionary, the Plaintiff's deposition demonstrates that he exercised discretion and independent judgment with regard to his primary duty. For his investigations, the Plaintiff testified that he would make "a credibility determination" as to whether to trust a tip source when proceeding with an investigation.[64] If the tip needed to be validated, he would speak with the District Manager and the ALPD to determine whether to speak with other retail workers at the store or to put in a hidden camera to validate the tip.[65] He stated that, at times, he would start an investigation without speaking with a supervisor and would

---

[63]   Pl.'s Resp. Br., at 5.

[64]   Bradford Dep. at 146-47.

[65]   <u>Id.</u>

create a plan for how to proceed with the investigation.[66] He also conceded that throughout the investigations no one was telling him what to do every step of the way.[67] As for interviews, although there was a script of questions, the Plaintiff admitted that he asked more questions than the ones listed in his prepared statements.[68] He only included the relevant questions and answers in his statements.[69] In addition, he stated that he conducted behavioral analysis interviews, which is "a type of interview where you ask a specific set of questions, and based on the reaction and the follow-up . . . you form some type of opinion whether [the interviewee is] guilty, innocent or involved in something."[70] He testified that he would probably tell his supervisors whether he thought the suspect or interviewee was being truthful.[71]

Beyond his investigations, the Plaintiff also exercised independent judgment with regard to his baseline audits. While the audits may have consisted of a checklist, the Plaintiff testified that each RLPM performed the audits differently and, at times,

---

[66]   Id. at 149, 169.

[67]   Id. at 151.

[68]   Id. at 160.

[69]   Id.

[70]   Id. at 280.

[71]   Id. at 121.

interpreted the audit questions differently.[72] And as the Defendant points out, the more important aspect of the baseline audits is how the Plaintiff used them to help reduce shrink in his area. If a store repeatedly failed its baseline audits, Bradford was expected to meet with management and review the audits.[73] He would then communicate with the District Manager or Region Manager which programs are available to help reduce shrink.[74] He stated that he believed his ability to persuade the Region and District Managers to buy into the loss prevention programs was better than most RLPMs.[75] The Plaintiff also testified that he help conduct a loss-prevention training by serving as a subject matter expert on loss prevention at the training.[76]

While the Plaintiff emphasizes the fact that he had to follow a specific procedure for both his investigations and baseline audits, the evidence the Plaintiff cites does not raise a question of fact as to whether he exercised discretion. For example, the Plaintiff cites the testimony of Hollie O'Brien. Between 2006 and 2013, O'Brien served as a

---

[72]   Id. at 98, 100, 220.

[73]   Id. at 94.

[74]   Id. at 132.

[75]   Id. at 133.

[76]   Id. at 135-36, 201

Loss Prevention Specialist for CVS.[77] In that position, O'Brien trained RLPMs on CVS's loss prevention software.[78] The Plaintiff quotes O'Brien's testimony that "[t]here's no discretion with a case. There's fields that we need, so that way we can learn from past behaviors in a store."[79] However, the Plaintiff fails to specify that O'Brien was merely referring to the fact that certain information had to be collected from RLPMs about their investigations, so that CVS could collect data on loss prevention.[80] Furthermore, O'Brien admitted in her testimony that she did not have any knowledge about what an RLPM does during his or her investigations.[81] Thus, O'Brien's testimony does not raise a question of fact. The Plaintiff also points to the declaration and testimony of Kenneth Warfield, a former ALPD at CVS.[82] It is undisputed that in his 2013 declaration, Warfield stated that RLPMs had no discretion and only followed rote procedures.[83] However, in his 2015 deposition, Warfield stated that he could only definitively testify about how he managed his team of RLPMs,

---

[77]     O'Brien Dep. at 9.

[78]     Id. at 10.

[79]     Id. at 49.

[80]     Id.

[81]     Id.

[82]     Warfield Decl. ¶ 1.

[83]     Id. ¶ 5.

which Bradford was not part of.[84] Warfield also recanted the portion of his declaration that stated CVS had stripped all RLPMs of their discretion and independent judgment.[85] Instead, he testified that he raised concerns about loss prevention initiatives turning into tasks.[86] Warfield's testimony, therefore, does not create an issue of fact regarding Bradford's exercise of discretion.[87] Finally, the Plaintiff asserts that he lacked the authority to make final decisions and merely followed directions from his supervisors. And while it is undisputed that he had to obtain approval from his supervisors at various steps throughout his investigations, the Plaintiff's testimony demonstrates that he also made decisions that were free from immediate supervision.[88]

As a result, the Court finds that the Plaintiff's primary duty involved the exercise of discretion and independent judgment.[89] The Court also finds that the Plaintiff

---

[84]    Warfield Dep. at 61, 109-10.

[85]    Id. at 98.

[86]    Id.

[87]    It should be noted that the portion of Warfield's deposition the Plaintiff cites is not part of the record. Nor does the Plaintiff provide the cited portion as an exhibit to his response brief. Under Local Rule 56.1(C), the Plaintiff must attach the portion of the deposition as an exhibit to his brief. See N.D. Ga. Local R. 56.1(C).

[88]    See Bradford Dep. at 149, 151, 169.

[89]    See Mullins v. Target Corp., No. 09C7573, 2011 WL 1399262, at *8 (N.D. Ill. Apr. 13, 2011) (finding that the plaintiff was exempt as an administrative employee because the employee exercised discretion when investigating fraud and

exercised discretion regarding matters of significance. "The term 'matters of significance' refers to the level of importance or consequence of the work performed."[90] The parties do not dispute that "[l]oss prevention is critical to and services CVS's retail and pharmacy sales business operations."[91] Therefore, as an employee that helped "determine[] the root cause of losses and develop[] solutions to prevent their reoccurrence," the Plaintiff exercised discretion with regard to matters of significance.[92] In sum, the Court finds that the Plaintiff is exempt from the FLSA's overtime provisions under the administrative exemption.

_____

theft at her employer's retail stores); Juback v. Radioshack Corp., No. 8:08-cv-758-T-24TBM, 2009 WL 1259990, at *4 (M.D. Fla. May 6, 2009) (holding that a loss prevention manager, whose duties included investigating losses, reporting findings to store and regional managers, and training others with regard to loss prevention, was exempt under the administrative employee exemption).

[90]    29 C.F.R. § 541.202(a).

[91]    Lehman Decl. ¶ 4; Pl.'s Resp. to Def.'s Statement of Facts ¶ 7.

[92]    Bradford Dep. at 361.

### B. Breach of Contract

The Plaintiff alleges that CVS maintained a severance policy that was applicable to all employees and thus formed part of his employment contract. Based on the alleged severance policy, the Plaintiff contends that the Defendant breached his employment contract by offering him severance pay in his separation agreement that was contingent on him waiving any FLSA claims. In Georgia, "an additional compensation plan offered by an employer and impliedly accepted by an employee, by remaining in employment, constitutes a contract between them, whether the plan is public or private, and whether or not the employee contributes to the plan."[93] However, the employee must be aware of the compensation plan prior to his or her termination.[94] Here, the Plaintiff does not allege that he was aware of a severance plan prior to his termination; he alleges that he was told he was eligible for severance pay under CVS's

---

[93]     Popovich v. Bekaert Corp., 222 Ga. App. 395, 396 (1996) (quoting Fletcher v. Amax, Inc., 160 Ga. App. 692, 695 (1981)).

[94]     See Ellison v. DeKalb Cnty., 236 Ga. App. 185, 186 (1999) (noting that Georgia courts "have held that provisions in an employee manual relating to additional compensation plans, *of which an employee is aware*, may amount to a binding contract between the parties"); Shannon v. Huntley's Jiffy Stores, Inc., 174 Ga. App. 125, 126 (1985) ("The policies in the employee handbook of which Shannon was aware form a part of her contract of employment.").

severance plan at the time of his termination.[95] Thus, the Plaintiff did not impliedly accept the severance benefits by maintaining his employment.

Even if the Plaintiff was aware of a severance plan, the Plaintiff has failed to put forth the terms of the plan. Generally, where courts have found an additional compensation plan created a contractual obligation, the plan is located in an employee's handbook or manual and contains the terms of the plan.[96] Here, the Plaintiff has not put forth an employee handbook or manual with a severance plan. Instead, as evidence of a severance plan, the Plaintiff puts forth an "Employee Separation Guide to Benefits and Pay" ("Guide"), which CVS gave him upon his termination.[97] In the Guide, CVS explains when an employee would receive severance payments, but it does not mention a specific severance policy.[98] It also does not set out the qualifications for receiving severance pay or describe how severance pay would be

---

[95]     Bradford Decl. ¶ 9.

[96]     See Popovich, 222 Ga. App. at 396 (holding that a question of fact existed as to whether the plaintiff was entitled to severance pay under the employer's policies and procedures manual or under the employee handbook); Fulton-DeKalb Hosp. Auth. v. Metzger, 203 Ga. App. 595, 597 (1992) ("[T]he parties are bound by the disability policy in the handbook which existed at the time [the plaintiff] accepted employment with [the defendant].").

[97]     Compl., Ex. B.

[98]     See id. ("Severance payments will be made on a Weekly, Biweekly, or Monthly basis (same as your current pay cycle) and the direct deposit or receipt of severance checks will be targeted for the Friday following the pay period.").

calculated. Furthermore, CVS maintains that it gives every employee the Guide, regardless of whether they were offered severance. As a result, the Court finds that the Guide does not create any contractual obligations between CVS and the Plaintiff.

Next, the Plaintiff attempts to demonstrate a severance policy by putting forth evidence of the severance benefits offered to three other RLPMs. However, this evidence is unhelpful. First, the terms of the severance benefits differ for each RLPM. For example, one severance offer pays out incentive compensation not yet accrued, but the other two offers do not.[99] Second, one of the three RLPMs testified that he was provided severance only because he requested it, not because of a severance plan.[100] In sum, the Court finds that the Plaintiff has failed to demonstrate that CVS breached his employment contract. The Defendant's Motion for Summary Judgment as to the Plaintiff's breach of contract claim should be granted.

## C. Equitable Relief

The Defendant contends that because the Plaintiff failed to address both of his equitable relief claims in his response to the Defendant's Motion for Summary Judgment, the claims should be deemed abandoned. The Court agrees. The Eleventh Circuit has repeatedly held that if a plaintiff fails to address a claim during summary

---

[99]   See Pl.'s Resp. Br., Exs. 13-15.

[100]   Huber Dep. at 363-65.

judgment, then the claim is deemed abandoned.[101] The Defendant's Motion provided arguments as to each of the Plaintiff's federal and state law claims, discussing them in separate sections. In the argument section of his opposition brief, the Plaintiff only responded to the Defendant's arguments regarding the FLSA overtime claim and the breach of contract claim. Neither equitable relief claim is discussed in any way. Consequently, the Court finds that those claims are abandoned by the Plaintiff.

## IV. Conclusion

For these reasons, the Court GRANTS the Defendant CVS Pharmacy, Inc.'s Motion for Summary Judgment [Doc. 329].

SO ORDERED, this 27 day of October, 2016.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[101]    See Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (holding that a claim included in the complaint but not raised at summary judgment is deemed abandoned); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").